**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rene RESTANO, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hector Jose BARRENECHE, Defendant-
Appellant.**

**Nos. 31035, 30927.**

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1971.

Jerry Mosca, Miami, Fla., for Restano.

Shalle Stephen Fine, Miami, Fla., for Barreneche.

Robert W. Rust, U. S. Atty., Neal R. Sonnett, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

1. The statute has since been repealed. 84 Stat. 1292 (1970).

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

In this judge-tried case, Barreneche and Restano were found guilty of violating 26 U.S.C. § 4704(a):

> It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.[1]

The information against them was as follows:

> The United States Attorney charges:

> That on or about the 8th day of May, 1969, at Miami, Dade County, in the Southern District of Florida, the defendant(s) Rene Restano (and Hector Barreneche) did purchase, sell dispense or distribut [sic] a quantity of a narcotic drug, to-wit: approximately six and one-half (6½) pounds of Cocaine, not in and from the original stamped package, in violation of Title 26, United States Code, Section 4704(a).

> /s/ NEAL R. SONNETT
> Assistant U. S. Attorney

We review the facts in the light most favorable to the Government.[2]

On May 8, 1969, customs officials in Houston, Texas, arrested a couple named Rodriguez who had just arrived from Panama via Mexico City. They had approximately 6.6 pounds of cocaine on their persons. The couple agreed to cooperate with the customs agents. The Rodriguezes told the agents that to com-

2. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Surrett & Walden v. United States, 421 F.2d 403 (5th Cir. 1970).

plete the delivery they were to go to a certain motel in Hialeah, Florida, but they did not know to whom the delivery was to be made. They were given a "dummy load," consisting of a small amount of the original cocaine, mixed with nonnarcotic ingredients and inserted in a mock-up package designed to resemble the original.[3]

Accompanied by an agent, the couple flew to Miami, and were transported to the motel where they were to meet the intended recipient. Several agents were "staked out" in the vicinity of the motel. They had rented two rooms, one for the Rodriguezes and a second directly across the parking lot from which they could observe the first. The Rodriguezes entered alone, and remained alone, in the room engaged for them. There was no electronic surveillance of the room.

The agents testified that they anticipated a "two car transaction," often used in narcotics pick-ups and deliveries, and they made some of the physical arrangements for surveillance based on that expectation. About four hours after the Rodriguezes arrived, two automobiles approached the motel, one immediately behind the other. As the first car parked, the second car slowed and did not pull in to park until the driver of the first vehicle walked into the motel courtyard. Barreneche, the driver of the first car, walked past the room where agents had taken up surveillance and to the motel office. He then walked to the Rodriguezes' room, knocked on the door, and was admitted to the room by Mr. Rodriguez.

After waiting about two minutes, the agents left their motel room with the intention of effecting an arrest of Barreneche. As they left their room, they saw Restano, the driver of the second car, walking toward the Rodriguezes' room. Restano saw the agents, who had begun to walk toward him. One agent testified that Restano abruptly changed his direction and began to walk away. The agents then made their arrest of Restano.[4] One agent stayed with Restano while others proceeded to the Rodriguezes' room and entered. They saw Barreneche standing in the bathroom. On the floor by the commode was the "dummy load" package. They arrested Barreneche. Neither arrest was made pursuant to a warrant. No contraband was found on the person of either appellant. After Restano's arrest his automobile was searched without a warrant, and in the trunk were found a balance scale set to weigh in grams up to a kilo, plastic bags, a plastic ball, and milk sugar (commonly used for cutting narcotics).[5]

Defendants moved to suppress the original cocaine, the dummy load and the articles seized from Restano's car. The thrust of their objection is that the agents lacked probable cause to arrest them so that the subsequent searches and seizures were invalid.[6] After an evidentiary hearing, at which four agents testified to the circumstances which we have outlined, the court denied the motion. The parties stipulated that the testimony at the motion hearing be considered as part of the evidence at

---

3. Testimony reveals that this is a procedure commonly used in narcotics investigation if there is danger that the contraband might be lost.

4. The government testimony was to the effect that Restano was walking "in a straight line" to the Rodriguezes' room. It is not entirely clear from the record just how far he was from the room when the agents spotted him and made the arrest. It was adduced at trial that there were other rooms, as well as a stairway,

toward which Restano could have been walking.

5. Powder could be seen on the scale in various places. It was subjected to chemical analysis, and was "traced to" heroin and cocaine, leading to the conclusion that at some time heroin and cocaine had been placed on the scale.

6. No substantial contention is made to us that the original cocaine and the dummy load should have been suppressed.

trial. The testimony at trial merely corroborated that given earlier. The Rodriguezes did not testify at either the motion hearing or at the trial. At the conclusion of the government's case the defense moved for judgment of acquittal on the ground of insufficiency of the evidence. The motion was denied as to appellants,[7] the defense put on no evidence, and the court found appellants guilty.

We need not pass on the denial of the motions to suppress. Even if all the evidence was admissible, the convictions must be reversed. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L. Ed.2d 610 (1970), the Supreme Court invalidated the § 4704(a) presumption arising from possession of cocaine.[8] Even if Barreneche had possession, a question not necessary for us to decide, the government was required, without the aid of a presumption, to prove that he purchased or sold or dispensed or distributed cocaine. There is not sufficient evidence to support a conviction of any one or more of the statutory alternatives. Only the Rodriguezes and Barreneche know what occurred in the motel room, and none of them testified. As to the possibility of purchase, there is no evidence of money changing hands, no sizeable amount of money was found on Barreneche's person, no narcotics on his person, and we do not know what, if any, money the Rodriguezes had on them when police entered. As to selling, distributing or dispensing, there is an absence of evidence of Barreneche's carrying on any of these activities.

Restano's possession of narcotics paraphernalia, and his presence and activities on the scene, were not sufficient to support his conviction as one purchasing, selling, dispensing or distributing the 6.6 pounds of cocaine or the part thereof in the dummy load. He too had no sizeable amount of money on his person. One can suspect that he was on the scene to participate in a purchase and in subsequent dispensing or distributing, but it is no more than a suspicion. The government asserts he was an aider and abettor of Barreneche, but a case against Restano on this theory falls with the case against Barreneche. Edwards v. United States, 286 F.2d 681 (5th Cir. 1960).[9]

As to both defendants, we cannot say that "the evidence is sufficient to justify the trial judge, as a trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence." Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir. 1971).

Neither defendant filed a motion for a new trial, therefore both convictions must be reversed and a judgment of acquittal entered. United States v. Musquiz, 445 F.2d 963 (5th Cir., 1971).

Reversed with directions.

---

7. But granted as to a third defendant, who was a passenger in Restano's car and never alighted from it.

8. There is no problem of retroactivity. *Turner* was decided after the appellants were arrested but prior to their trial.

9. The government does not claim that either Barreneche or Restano was an aider and abettor of the Rodriguezes. There was testimony that they pleaded guilty, but to what offense we are not told.