**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Judith Tomlinson BULLOCK and Roy
Rodriguez, Jr., Defendants-Appellants.**

**No. 71–1067**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1971.

Rehearing Denied Dec. 20, 1971.

---

5. *See, e. g.*, United States v. Thomas, ante at n. 45.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

J. Thomas Cardwell, Orlando, Fla. (Court-appointed), for Bullock.

James M. Russ, Orlando, Fla. (Court-appointed), for Rodriguez, Jr.

John L. Briggs, U. S. Atty., Kendell W. Wherry, Orlando, Fla., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Roy Rodriguez, Jr. and Judith Bullock were tried, along with three others not involved in this appeal, under a three count indictment charging each of them with: One, conspiracy to falsely make, forge, and utter stolen United States Postal Money Orders, in violation of 18 U.S.C.A. § 500; Two, receiving, concealing, and retaining stolen United States property of a value in excess of One Hundred Dollars, in violation of 18 U.S. C.A. § 2 and 18 U.S.C.A. § 641; and Three, transporting and causing to be transported in interstate commerce stolen United States Postal Money Orders of a value in excess of Five Thousand

Dollars, in violation of 18 U.S.C.A. § 2314. Rodriguez was convicted on all three counts; he received consecutive sentences of five and ten years respectively on Counts One and Two, and a ten-year concurrent sentence on Count Three. Bullock was convicted and given consecutive sentences of five years and one year respectively on Counts One and Three, Count Two having been dismissed by the court.[1] Both Rodriguez and Bullock urge that numerous errors in the proceedings below require reversal of their convictions; we find all but one of their contentions to be without merit. As to Rodriguez, we affirm in all respects; as to Bullock, we affirm in part and reverse in part.

The facts stated most favorably to the government's position show the following. Sometime between 6:00 P.M., Saturday, October 18, 1969 and 3:00 P.M. the following day, 400 unissued postal money orders and validating equipment used by post office personnel in issuing money orders were stolen from the Azalea Park Branch of the Orlando, Florida Post Office. On October 21, Rodriguez drove Bullock and another woman to a car rental agency in Tampa where the latter two rented a car. On October 22 Rodriguez and Bullock, along with three others, drove from Tampa to Orlando in the rental car. During that drive, remarks were made indicating that the group was proceeding to New Orleans, and would go there by way of Orlando since Rodriguez did not want to be seen leaving the Tampa airport; that the purloined money orders had come from Orlando; and that they were now ready to be filled out. At the Orlando airport, Rodriguez evidenced concern over a particular bag. He assigned assumed names to members of the group for purposes of the flight, and purchased airline tickets in these names for each. The members of the group reassembled on October 22 in Rodriguez' hotel room in New Orleans. At that time, Rodri-

guez distributed a number of blank money orders to each of the four other persons and they in turn filled out those orders with fictitious purchaser and payee names. The names used matched fraudulent drivers' licenses and credit identification cards provided by Rodriguez. The group then split into three parts to begin cashing the money orders. Both Rodriguez and Bullock had possession of fraudulently completed money orders, identified as having been stolen from the Azalea Branch Post Office, and cashed or attempted to cash these money orders.

## I. THE INDICTMENT

Rodriguez mounts several alternative attacks upon the indictment against him. Count One, the conspiracy count, was divided into several sections; the bulk of it consisted of the enumeration of 18 overt acts allegedly committed by at least one conspirator in furtherance of the conspiracy. The first paragraph of the count charged an unlawful agreement among the named defendants, and stated two specific unlawful objects of that agreement. Those objects were listed under subdivisions (a) and (b) of the paragraph, and both were specifically described as being violations of 18 U.S.C.A. § 500.

Rodriguez contends first that the count is defective in that the objects of the conspiracy are not set out until the paragraph reaches its subdivisions, and that even if those subdivisions are reached, the count is still defective because all the elements necessary to constitute violations of the offenses contained therein are not set out. It is not required that the unlawful objects of a conspiracy be set out in the first or any other specific line of a conspiracy count. All that is required is that the indictment sufficiently apprise the person named of the charges against him so that he may adequately prepare his defense and not be unfairly surprised by

---

[1]. Bullock's motion for judgment of acquittal was granted as to Count Two because she had already been previously tried for the offense alleged therein. *See* United States v. Bullock, 441 F.2d 59 (5th Cir. 1971).

the evidence he is called upon to meet; and that the language used be clear enough so that a plea of former acquittal or conviction will stand, in the event subsequent proceedings are brought against him for the same offense. United States v. Fischetti, 450 F.2d 34 (5th Cir. 1971) [1971]; United States v. Knight, 451 F.2d 275 (5th Cir. 1971) [1971]; United States v. Phillips, 423 F.2d 1134 (5th Cir. 1970). The language in Count One easily met these tests. The second claim is also meritless. The failure of the court to state all the elements that would have to be shown if the unlawful object of the conspiracy had been charged as a substantive offense is not fatal, United States v. Fischetti, *supra;* United States v. Musgrave, 444 F.2d 755 (5th Cir. 1971) [1971], "because it was not necessary to state the object of the conspiracy with the same precision which would be required in an indictment charging the substantive offense." Walker v. United States, 342 F.2d 22, 27 (5th Cir. 1965), cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965).

As an alternative to his argument that the insufficiency of Count One is fatal, Rodriguez argues that its oversufficiency requires reversal because its excess language should have been stricken upon his timely motion. The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial. *See* United States v. Bufalino, 285 F.2d 408 (2nd Cir. 1960), and United States v. Spock, 416 F.2d 165 (1st Cir. 1969). The government's only response to this argument is that "(i)n one breath the indictment is criticized for not adequately stating enough particulars, yet it is claimed the defendant is prejudiced by surplusage in the indictment." This syllogism, like many, is inaccurate. Count One filled five of the six and one-half typewritten pages on which the indictment was cast. That it may have

been too brief in one part does not prove it was not overbroad in another. Although the path between overly cryptic brevity and prejudicial superfluity in all portions of the indictments may be narrow, the "plain, concise and definite written statement of the essential facts constituting the offense charged," required by Fed.R.Crim.P. 7(c), is the only legal way through the gate.

The appellate test is based upon a determination of whether the district judge abused his discretion in refusing to strike the objectionable language. To now hold that the refusal to strike should invalidate Rodriguez' conviction, we would have to be convinced that the allegedly excessive language was irrelevant, inflammatory and prejudicial. It would unnecessarily prolong this opinion to recite the specific textural matter here. Suffice it to say, this standard, which is described as "exacting", was not met. *See* C. Wright, 1 Federal Practice and Procedure, § 127 p. 278.

Count Two is said to be defective for multiplicity, in* that it charges violations of both 18 U.S.C.A. § 2 and 18 U.S.C.A. § 641. The objection is not well-taken. 18 U.S.C.A. § 2, which makes he who aids or abets the commission of an offense punishable as a principal, is an alternative charge in every count, whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense. United States v. Gower, 447 F.2d 187 (5th Cir. 1971).

Rodriguez' final attack on the indictment is that it was not "found" in accordance with Fed.R.Crim.P. 6, in that it was not concurred in by 12 or more grand jurors, but was merely a formal reindictment which was signed only by the foreman. Because under Rule 6(c) a written record of this procedure is required to be made and preserved, we previously entered a conditional order remanding this cause to the

district court, requiring that, if possible, the record before us be supplemented with a copy of the document indicating that the requisite number of jurors had concurred in the finding.[2] We now have that document before us, and it discloses that Rule 6 was adhered to in all respects. Thus, Rodriguez' battle against the indictment is lost.

## II. MOTION FOR SEVERANCE

In the trial below, Rodriguez made a motion for severance which was denied. On appeal, he argues that the denial deprived him of *Bruton,* rights,[3] and of the opportunity for a fair trial. However, he makes no specific showing whatever indicating wherein he was prejudiced by the lower court's refusal to afford him a trial in his case separate from his alleged coconspirators. The question of whether to proceed with several co-defendants or grant separate trials is one committed initially to the sound discretion of the district judge; he must weigh the possibilities of confusion and prejudice against the needs for the efficient and economical administration of criminal justice. Demonstrating that the judge abused his discretion in denying a motion for severance requires more than the suggestion that a separate trial might have offered a better chance for acquittal. Tillman v. United States, 406 F.2d 930 (5th Cir. 1969). The abuse must be clear, and the prejudice must be positively shown. United States v. Hansbrough, 450 F.2d 328 (5th Cir. 1971), United States v. Levrie, 445 F.2d 429 (5th Cir. 1971). Rodriguez has failed to make any such showing.

## III. VENUE

Rodriguez asserts that venue in this case does not lie in the Middle District of Florida, and that proceedings against him were improperly instituted there. However, 18 U.S.C.A. § 3237 expressly fixes venue for the prosecution of those crimes which are begun in one district and completed in another. Under the terms of that statute, such a crime may be prosecuted in any district where it was "begun, continued, or completed." Furthermore, where the crime charged is illegal transportation in interstate commerce, as is true here, it may be "inquired of and prosecuted in any district from, through, or into which such commerce * * * moves." On the facts of this case, and under these special venue provisions, the court below was clearly invested with the necessary territorial jurisdiction to proceed.

## IV. IMPROPER EVIDENCE

Of the 400 stolen money orders involved in this case, 124 were introduced at trial. Rodriguez objected to the introduction of five of these since they were not specifically listed in the indictment. The judge allowed the five money orders into evidence, but instructed the jury that these five were to be considered as evidence only as to the conspiracy count, and not as to Counts Two and Three of the indictment. This instruction, coupled with the rule followed in this circuit that the government may introduce evidence not mentioned in the indictment for the purpose of showing a conspiracy, United States v. Ayers, 434 F.2d 60 (5th Cir. 1970), Reese v. United States, 353 F.2d 732 (5th Cir. 1965), demonstrates that this claim of error is without merit.

## V. PRE-TRIAL DISCOVERY AND JENCKS ACT MATERIALS

Rodriguez argues that the government's non-compliance with certain pre-trial discovery orders, and with the requirements of the Jencks Act, 18 U.S.C.A. § 3500, were sufficient grounds for mistrial, and that his motions below asking for the same should have been granted. We do not agree. The only instance of inadequate discovery Rodri-

2. United States v. Bullock and Rodriguez, 448 F.2d 728 (5th Cir. 1971).

3. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

guez puts forward deals with the five money orders discussed previously. Since there was more than sufficient evidence of conspiracy even without these money orders, the error, if any, was harmless. However, the Jencks Act contention is a more serious matter. This circuit has not hesitated to find error where prejudice is shown from insufficient compliance with that Act. United States v. Williams, 447 F.2d 894 (5th Cir. 1971) [1971]. The government's compliance here was grudging at best, and their conduct as to this matter moved the judge almost to the point of exasperation. However, Rodriguez has not shown us, nor can we find through our inspection of the record, any instance where non-compliance with the Jencks Act in any way hampered the defense. We agree with the trial court that the government's conduct was not harmful error.

## VI. SUFFICIENCY OF THE EVIDENCE

■ Both Rodriguez and Bullock contend that the evidence presented to the jury was insufficient to sustain their respective convictions. Rodriguez makes this contention as to Counts Two and Three, while Bullock makes it only as to the latter. We test their arguments by viewing the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the prosecution and determine as a question of law whether there is substantial evidence, either direct or circumstantial, to support the verdict. United States v. Jacobs, 451 F.2d 530 (5th Cir. 1971) [1971].

■ The only element of his conviction under Count Two that Rodriguez attacks is that the government failed to establish that the value of the property

allegedly concealed and retained was in excess of One Hundred Dollars. We think the evidence was more than sufficient on this point: the number of money orders taken was established; the conspirators' ability to validate previously blank money orders was shown; the value of the money orders when cashed was estimated to be 40,000 dollars; and it was proven that Rodriguez actually converted several of the money orders for amounts which, collectively, totaled more than one hundred dollars. Whether the jury evaluated the money orders at what they actually fetched when fraudulently negotiated through legitimate channels, or at what they might bring on the thieves' market, they could have reasonably assessed that value at a figure in excess of one hundred dollars. See Jalbert v. United States, 375 F.2d 125 (5th Cir. 1967), cert. denied 389 U.S. 899, 88 S.Ct. 225, 19 L.Ed. 2d 221.

■ Although Rodriguez makes both a sufficiency of the evidence attack, and alleges other errors regarding his conviction under Count Three, we decline to consider any of them. His sentence under that count is to run concurrently with the sentences he received under Counts One and Two, and the latter two have been affirmed by this opinion. The concurrent sentence doctrine makes further consideration unnecessary. United States v. Boatwright, 446 F.2d 913 (5th Cir. 1971), United States v. Easterly, 444 F.2d 1236 (5th Cir. 1971).

■ Bullock likewise makes several attacks on her conviction under Count Three, but since we accept her contention that there was insufficient evidence to sustain it, we need consider that contention only.[4] Bullock's argument is that

4. Both Bullock and Rodriguez contend that Count Three of the indictment, which charged a violation of 18 U.S.C.A. § 2314, was faulty because of the final subsection thereof which provides, in part:
  "This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an

obligation or other security of the United States * * *."
While it would certainly appear that fraudulently completed United States Postal Money Orders are excepted thereunder, we find it unnecessary to reach this issue to decide this appeal.

the government failed to adequately establish an essential element of the offense entailed in a violation of 18 U.S.C.A. § 2314, to wit: that she transported, or caused to be transported, stolen money orders in interstate commerce between Orlando and New Orleans. The government's reply is that the transportation element was sufficiently shown on either one of two theories. First, that Bullock had joint or constructive possession of the money orders during the interstate travel between Orlando and New Orleans; or second that the jury could reasonably infer from her unexplained possession of recently stolen money orders that she transported them from the site of the theft. We cannot, even on our construction of the evidence most favorable to the government, sustain either of these two arguments.

We have recently described constructive possession of an article as requiring a coalescence of the intention and the power to exercise dominion and control over that article. United States v. Virciglio, 441 F.2d 1295 (5th Cir. 1971). Assuming we were satisfied that the evidence showed Rodriguez was actually carrying the money orders with him in the bag mentioned earlier—which we must do for purposes of this Count since there was no other evidence whatever that the group had the money orders with them during the trip between Orlando and New Orleans—there was no evidence that Bullock knew he had them. The evidence at best showed that she knew where the money orders came from, and that they were ready to be filled out. Further, we find no indication that she either intended to exercise or did exercise authority, or asserted or shared the right to control the money orders. The record shows that Rodriguez was in command of the entire undertaking. He directed Bullock to the Tampa car rental agency, contacted at least two of the other conspirators, made the remarks during the Tampa to Orlando drive which we set out above concerning the origin of the money orders, selected the group's destination, passed out the money orders at the hotel, passed out the drivers' licenses and credit cards, and directed the filling out of the money orders. The proof so overwhelmingly places the entire affair under his control, it leaves no basis for attributing any of this to Bullock. Moreover, there was no evidence she was to share, or ever did share, in the proceeds of the money orders. It is true that there was evidence that Bullock was Rodriguez' friend. However, neither that relationship, however intimate, nor her accompaniment of Rodriguez during the interstate trip is sufficient to show she was exercising dominion and control over the money orders.

The unexplained possession of recently stolen property is sufficient grounds upon which a jury could find that the one in possession transported the property. It is also true that the proof showed that Bullock did indeed have possession of the stolen property in New Orleans. However, in order to reason that the fact of possession circumstantially proves the fact of interstate transportation, we would have to be satisfied that the evidence is inconsistent on this issue with every reasonable hypothesis save that of her guilt. United States v. Restano, 449 F.2d 485 (5th Cir. 1971), United States v. Davis, 443 F.2d 560 (5th Cir. 1971). We cannot accept that proposition. On the contrary, as we have stated, the hypothesis that it was Rodriguez, not Bullock, who transported the money orders to New Orleans, is not only reasonable, but indeed likely. Thus we cannot allow Bullock's conviction on this count to stand, and as to Count Three alone, we reverse and remand as to her.[5] The case in all other respects is affirmed.

Affirmed in part, and reversed and remanded in part.

5. Bullock moved for a new trial in the court below. Therefore, the government is entitled to retry her if it chooses to do so. United States v. Musquiz, 445 F.2d 963 (5th Cir. 1971).