**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Anthony DITATA, Defendant-Appellant.**

**No. 71-1283.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1972.

Decided Nov. 16, 1972.

John Powers Crowley and Michael B. Nash, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Chicago, Ill., Colleen Kollar, and John T. Spotila, Crim. Div., U. S. Dept. Justice, Washington, D. C., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Defendant-appellant Ditata was convicted by a jury on each of four counts in an indictment charging him with the offense of possessing stock certificates stolen from interstate commerce in violation of 18 U.S.C. § 659.[1] We affirm.

The American Bank Note Company of New York printed 5,000 blank stock certificates of Westinghouse Electric Corporation for the Continental Illinois National Bank and Trust Company of Chicago (Continental). On October 4, 1968 these certificates were delivered to Emery Air Freight for shipment via American Airlines to O'Hare Airport in Chicago. When Emery Air Freight went to O'Hare Airport to pick up the shipment for delivery to Continental, the certificates were missing.

On January 20, January 31, February 10 and May 26, 1971, various Westinghouse Electric Corporation stock certificates were pledged as collateral for loans at separate banks in the Chicago area. The pledged certificates were identified as part of those missing in transit. Although the certificates were blank when shipped, the government evidence revealed they bore forgeries of the transfer agent, registrar, name of registered owner, number of shares and date of issuance. These forgeries were all essential for negotiation of the certificates. In each of the four instances, Ditata was identified as the pledgor of the certificates, and successful borrower. He was eventually indicted, tried and convicted. This appeal followed.

Each of the four counts charged that the value of the certificate subject of the count was in excess of $100. The significance of this allegation is in the penalty involved: *i. e.*, should value exceed $100 a guilty defendant may "be fined not more than $5,000 or imprisoned not more than ten years, or both;" however, in the event value does not exceed $100 a guilty defendant "shall be fined not more than $1,000 or imprisoned not more than one year or both."[2]

At the close of the government's case, Ditata moved for acquittal contending, inter alia, that the stock certificates passed by him had a value of less than $100. The district judge denied the motion. He gave an instruction on the val-

1. § 659. Interstate or foreign baggage, express or freight; State prosecutions

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any railroad car, wagon, motortruck, or other vehicle, or from any station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; or

* * * * *

2. 18 U.S.C. § 659.

ue "in excess of $100" as charged in the indictment and submitted the question of value to the jury in the form of a special verdict.

The court instructed the jury in substance that "only in the event" it found Ditata guilty was it to consider the question of value, and that if that question was reached the jury would have to consider the "arguments" on both sides as to value on the dates charged in the indictment. About an hour and a half after the jury retired, it sent a question to the judge:

> [H]ow is the value . . . to be considered? Market value, paper value, which is nine cents, or nothing, in establishing . . . whether it [the property] exceeded $100 or not.

The judge recalled the jury and reinstructed it that upon the evidence heard it had to decide what the value was "on the date that is referred to in each count." The jury retired again and subsequently returned the guilty verdict and a special verdict finding value to be "in excess of $100."

Ditata contends that the giving of the instruction, as to value, was reversible error because the jury was told to determine the value of the certificates as of the dates of Ditata's possession of them instead of the date they were stolen. If Ditata's contention is correct he could be found guilty and imprisoned under Section 659 for the misdemeanor but not for the felony, since the value of each certificate in blank form, when stolen, was only 9.3 cents. However, Ditata was indicted for and convicted of the possession, and not the theft, of the certificates. Consequently, he cannot argue persuasively that the time of theft is controlling in determining the value of property related to his offense. We hold therefore that the instruction is not erroneous.

Ditata argues that because of the interstate commerce element in Section 659 it is theft from interstate commerce—the time of the theft—that controls the determination of value. He relies principally upon the Congressional purpose and this court's decision in United States v. Dandridge, 437 F.2d 1324 (7th Cir. 1971).

It is true that the interstate commerce element is very important since it constitutes the federal offense, United States v. Gollin, 166 F.2d 123, 125 (3rd Cir. 1948), and "the facts existing at the time of the [theft] are the controlling element with reference to the interstate commerce status," *Id.* at 125, of the certificates. We do not agree, however, that merely because the federal jurisdictional element is determined at the time of theft, value in possession must be established as of that moment.

The Congressional purpose in enacting Section 659 was "to protect and promote the flow of goods in interstate commerce, and that this undertaking is not to be hampered by technical legal conceptions." United States v. Berger, 338 F.2d 485, 487 (2nd Cir. 1964). We cannot attribute to Congress an intent to restrict value of property stolen from interstate commerce to the moment of the theft. Should this be done, the actual value might then be negligible while its potential value realized in the "thieves' market" would be substantial. Attributing that intent to Congress would be a benefit to persons on the way to the thieves' market, who would not only profit by their criminal activity but who would also risk a comparatively slight penalty. In our opinion, the Congressional purpose is better served by appraising the stolen certificates at the point of Ditata's unlawful possession—the crime with which he was charged.

The instruction given on value is, in our view, not inconsistent with the *Dandridge* decision. The instruction given in *Dandridge* which the court said was "quite adequate and correct" was

the LaBuy *instruction of proof of value.*[3] Ditata's proffered instruction A was substantially the same as the one approved in *Dandridge*. In that case, however, Dandridge was arrested in Madison, Illinois, for possession of scrap automobile radiators the same day the radiators were stolen in Madison from interstate commerce. On appeal from his conviction, Dandridge contended that the proof at trial failed to show that the radiators had a value in excess of $100 *at the place* of the theft, *i. e.*, that the proof showed merely the general market price of the radiators on the day of the theft and his arrest, but did not show that was the price at Madison, Illinois, where the theft took place. That is the reason why this court found the LaBuy instruction on proof of value "quite adequate and correct."

The district judge eliminated the definition of value in the Ditata instruction. He also refused to give Ditata's instruction D, which stated that "value was to be determined as of the date of the theft." That language is not in the LaBuy instruction.

The judge was not in error on the facts before him in modifying the LaBuy instruction defining value which was proffered by Ditata, and in refusing to instruct the jury to limit its consideration of value to the time of the theft. This court's decision in *Dandridge*, does not require reversal of Ditata's conviction.

No case is cited by the parties or found by us wherein the precise point urged by Ditata has been decided. However, several decisions involving construction of 18 U.S.C. § 641 persuade us to reject Ditata's argument. That statute has a provision similar to that in Section 659 providing a lesser fine and imprisonment if the value of stolen United States property is not in excess of $100. In United States v. Bullock, 451 F.2d 884 (5th Cir. 1971), defendants were convicted of, inter alia, "receiving, concealing, and retaining" United States Postal Money Orders in violation of 18 U.S.C. § 641. Defendants contended there was not sufficient proof of value of the money orders in excess of $100. The court decided that there was sufficient proof in the testimony of what value defendants obtained through "legitimate channels, or at what they might bring on the thieves' market." *Id.* at 890. Similarly, in Churder v. United States, 387 F.2d 825 (8th Cir. 1968), defendants were convicted, inter alia, under Section 641 for "concealing and retaining" United States Postal Money Orders. The court decided, as a practical matter, that the measure of value was "the amount the goods may bring to the thief." *Id.* at 833.

In United States v. Kramer, 289 F.2d 909 (2nd Cir. 1961), defendant was convicted of, inter alia, receiving, concealing and retaining stolen United States Money Orders in violation of 18 U.S.C. § 641. The court, speaking on the issue of value, stated that "[i]t is not essential that the stolen property be worth $100 at the moment of receipt" when the orders were blank. *Id.* at 921. It was sufficient "that at some time while Kramer was concealing or retaining the money orders" they aggregated in value of $100. *Id.*

We hold that the district court rulings on the instructions proffered by Ditata were not erroneous on the facts, and that the given instructions, on those facts, were proper.

Affirmed.

3. Jury Instructions in Federal Criminal Cases, § 20.04.

The Government must prove the value of the property stolen because the law provides a greater penalty if the value of the property exceeds $100. Value under this statute means face, par or market value, or cost price, either wholesale or retail, whichever is greater. The value of the property stolen is a question of fact to be determined by the jury.