UNITED STATES of America

v.

Robert MOORE, Appellant.

UNITED STATES of America

v.

Clifford WAYMON, a/k/a John
Jones, Appellant.

Nos. 77–1822 and 77–2015.

United States Court of Appeals,
Third Circuit.

Argued Jan. 4, 1978.

Decided Feb. 10, 1978.

Certiorari Denied April 3, 1978.
See 98 S.Ct. 1589.

Douglas Riblet, Asst. Defender, Defender Association of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant Moore.

John Rogers Carroll, Carroll, Creamer, Carroll & Duffy, Thomas Colas Carroll, Philadelphia, Pa., for appellant Waymon.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, App. Div., Bonnie Brigance Leadbetter, David R. Strawbridge, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, GIBBONS and GARTH, Circuit Judges.

OPINION OF THE COURT

GARTH, Circuit Judge.

Appellants Clifford Waymon and Robert Moore were charged with one count of conspiracy to violate 18 U.S.C. § 2314 by transporting in interstate commerce stolen property valued in excess of $5,000, in violation of 18 U.S.C. § 371. Waymon and Moore were tried on stipulated facts to the district

court sitting without a jury. The sole issue here, as well as in the district court, is whether the $5,000 jurisdictional amount requirement of 18 U.S.C. § 2314 has been met. The district court in its opinion of May 3, 1977, which adjudged the defendants guilty and denied their motions for judgments of acquittal, held that the Government had proved the necessary jurisdictional amount. We affirm.

## I.

In the summer of 1976, 22,400 blank Ticketron tickets were stolen from shipments to the Jenkintown and Philadelphia branches of Gimbels Department Store. These tickets, in blank form, cost Ticketron $51.74.

A quantity (at least 2200) of the stolen tickets came into the possession of the defendants. Waymon and Moore obtained legitimate Ticketron tickets for various concerts in July, August and September, 1976. They then took the stolen blanks and the legitimate tickets to David Pope, a printer in Philadelphia. Negatives were made of the legitimate tickets, and from the negatives a block and plate was produced. The block and plate and the stolen blanks were then used to print counterfeit tickets.

The counterfeit tickets were taken from Philadelphia to various concert sites in New Jersey, Connecticut, and Massachusetts, where the tickets were sold. Some of the tickets were sold by the defendants directly to buyers at a "retail" price. Others were sold in large quantities to one Rodney Parker at a "wholesale" price.

Parker paid the defendants $3,337 for 778 tickets, which had been printed for various concerts. The defendants also sold 1072 tickets to others, presumably at "retail", for a total of $8,302.50. The combined sales made by the defendants to Parker and others resulted in revenue to the defendants of $11,639.50. Parker in turn sold the tickets which he had purchased from the defendants to concertgoers at scalper prices. It was stipulated that the overall value of all tickets—those sold by Parker as well as those sold by the defendants—was, as to face value in excess of $14,000, and as to the amount realized (*i. e.* the "market" value) over $15,000.

## II.

There is no dispute that at the time the blank tickets were stolen they had an intrinsic value substantially less than $5,000. Nor is there any dispute that the tickets had a value in excess of $5,000 at the time they were transported in interstate commerce. The issue before us, therefore, presents two questions: First, may the jurisdictional amount element of 18 U.S.C. § 2314 be determined by reference to value[1] at the time of interstate *transportation*, or must it be determined by reference to value at the time of theft? Second, if the jurisdictional amount can be determined using value at the time of transportation, did the defendants, in counterfeiting the tickets, alter the blank tickets so substantially that what was transported was not the same property as that which had been stolen?

## A.

Section 2314 of title 18 renders it unlawful to transport "in interstate commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud . . . ."[2] Some courts have held that the $5,000 requirement must be proved by value at the time of theft. *See, e. g., Stern v. United States*, 204 F.2d 647 (6th Cir. 1953); *Her-*

---

1. 18 U.S.C. § 2311 defines "value", as used in § 2314, as "the face, par, or market value, whichever is the greatest . . . ." In addition, "the aggregate value of all goods . . . referred to in a single indictment shall constitute the value thereof."

2. The third paragraph of 18 U.S.C. § 2314 prohibits the interstate transportation of any forged security, regardless of value. The Government concedes that the Ticketron tickets are not securities within the meaning of that statute. *See United States v. Jones*, 450 F.2d 523 (5th Cir. 1971) (blank airline tickets not securities within meaning of 18 U.S.C. § 2311 or § 2314); *Merrill v. United States*, 338 F.2d 763 (5th Cir. 1964) (credit sale invoices not securities).

man v. United States, 289 F.2d 362 (5th Cir.), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). These cases, however, do not deal with situations such as the one in this case where the value at the time of the taking differs from the value at the time of the transportation.

In the analogous case of prosecutions brought pursuant to 18 U.S.C. § 2315 (receiving, concealing or disposing of property of the value of $5,000 or more, knowing the same to have been stolen), several courts have held that value may be determined as of the time of theft or at any time upon receipt or during concealment. See United States v. Gardner, 516 F.2d 334 (7th Cir.), cert. denied, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975); United States v. Riso, 405 F.2d 134 (7th Cir. 1968), cert. denied, 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969); United States v. Tauro, 362 F.Supp. 688 (W.D.Pa.), aff'd without opinion, 493 F.2d 1402 (3d Cir. 1973).[3] See also United States v. Kramer, 289 F.2d 909 (2d Cir. 1961) (Friendly, J.) (prosecution under 18 U.S.C. § 641 for receiving and concealing stolen postal money orders with a value in excess of $100). In Kramer the court held that it was not essential that the stolen property be worth $100 at the moment of receipt by the defendant, but that it was sufficient if the money orders attained that value at some time during their retention or concealment. Similarly, in United States v. Ditata, 469 F.2d 1270 (7th Cir. 1972) (conviction under 18 U.S.C. § 659 for possession of stolen stock certificates of value in excess of $100), the court held that the certificates could be valued at the time of theft or at the time of possession.

■■■ While the cases cited do not concern the precise statute which we must construe, the reasoning which underlies the results reached in those cases applies with equal validity to this case. The $5,000 re-

quirement of § 2314 is designed not to protect those who transport stolen property, but is rather designed "to avoid overtaxing the Department of Justice." United States v. Schaffer, 266 F.2d 435, 440 (2d Cir. 1959), aff'd, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). Moreover, the National Stolen Property Act, of which both 18 U.S.C. § 2314 and § 2315 are a part, is aimed not only at discouraging the interstate transportation and receiving of stolen property, but also at deterring the original theft. See United States v. Gardner, supra. A valuation standard for § 2314 which looks to either the time of theft or the time of transportation is consistent with both these statutory aims, yet is not inconsistent with the governmental resource-preserving function of the $5,000 jurisdictional amount. We therefore hold that the "value" element of 18 U.S.C. § 2314 may be proved by evidence of the stolen property's value either at the time of theft or at the time of transportation.[4]

This determination does not, however, complete our inquiry. As we observed at the outset of this opinion, two questions have been presented by the defendants' appeal. We have answered the first with respect to the "time" at which value may be determined. We now turn to the second.

### B.

■■ Waymon and Moore argue that the blank tickets have been substantially altered by their efforts. Thus, they contend, it was not the stolen property[5] which was valued in excess of $5,000 at the time of transportation, but rather property which was the product of their own creation. Necessary to this thesis is their further contention that the stolen Ticketron blanks were an unimportant component of the counterfeited tickets which they transported in interstate commerce.

---

**3.** We are aware that in United States v. Weinberg, 478 F.2d 1351 (3d Cir. 1973) (Seitz, C. J.), this court expressly did not decide if value in the context of 18 U.S.C. § 2315 is to be determined at time of theft or at the time of disposition.

**4.** In so holding, we agree with the Fifth Circuit's discussion in United States v. Nall, 437

F.2d 1177, 1187 (5th Cir. 1971) (§ 2314 security theft case remanded for proof of value at "the time [the securities] [were] stolen or at some time during [their] receipt, transportation or concealment").

**5.** Of course, only the transportation of stolen property is proscribed by § 2314.

In developing this argument both defendants analogize their counterfeiting efforts to the painting of a masterpiece on two dollars worth of stolen canvas. The transportation across state lines of the finished painting, according to defendants, would certainly not be within § 2314's reach. Whether or not that is so, we do not face that situation here. We cannot help but observe, however, that in that circumstance it is obvious that the value of the masterpiece would be attributable wholly to the efforts and talent of the artist. In the case *sub judice*, on the other hand, however substantially the efforts and "talent" of the defendants contributed to the finished product, the Ticketron blanks were essential in order for the counterfeit tickets to have any value. Had the defendants received stolen plain cardboard, and then used that cardboard to create counterfeit theatre tickets, the situation would be analogous to the "masterpiece" hypothetically discussed above. The blank Ticketron tickets, however, were not simply pieces of blank, almost valueless cardboard to which the defendants added their "creative" efforts. Rather, each was imprinted with the Ticketron logo as well as other information which appears on authentic Ticketron tickets. With this stock at their disposal, the defendants could readily produce "genuine" concert tickets and profit from their sale. Indeed, we ask ourselves: if the authentic Ticketron stock was not an essential ingredient to a counterfeiting scheme, why should anyone run the risk of stealing the blanks? [6]

Although the defendants may have increased the value of the Ticketron blanks by their counterfeiting efforts, they did not by their actions so substantially alter the stolen blanks as to render the transported counterfeit tickets essentially different from what was stolen, within the meaning of § 2314. Accordingly, the finding of the district court that "the defendants did not alter the nature of what had been stolen, but merely fulfilled it by completing the process for which the blanks were designed and intended," was not clearly erroneous. Dist.Ct.Op. at 6. We too are satisfied that on this record the stolen property (the Ticketron blanks) was so uniquely and intrinsically an essential element of, and an essential ingredient in, the defendants' unlawful activity, that the final value of the transported property (the counterfeit tickets) must necessarily be attributed in large part to the stolen blanks. In such a situation, if a value in excess of $5,000 is attained or realized—whether at the time of theft or at the time of transportation—the value element of 18 U.S.C. § 2314 will be satisfied. While we express no opinion as to whether other fraudulent transactions, when tested by the above standard, may fall within or without the value requirement of § 2314, it is clear that in this case the value of the counterfeit Ticketron tickets exceeded $5,000, thus satisfying the Government's burden.

Our conclusion here is buttressed by reference to those cases which concern the theft, receipt, concealment or retention of blank postal money orders in violation of 18 U.S.C. § 641. In order to obtain a felony conviction under § 641 the Government must show that the value of the stolen property exceeds $100. In many cases blank money orders are stolen. The blank money orders are then completed with false information and a validating stamp is forged. Faced with the argument that stolen *blank* postal money orders can never be worth more than the paper on which they are printed, the courts have consistently held that the value requirement of § 641 may be satisfied by reference either to the face value of, or the amount received for, the *filled-in* money orders, or to a "thieves' market" for blank money orders. *See United States v. Kramer, supra; Churder v. United States*, 387 F.2d 825 (8th Cir. 1968) (Blackmun, J.); *Jalbert v. United States*, 375 F.2d 125 (5th Cir. 1967); *United States v. Bullock*, 451 F.2d 884 (5th Cir. 1971);

---

6. Even if the defendants' argument as to value was to succeed in their avoiding federal prosecution, the same acts which form the basis for the federal indictment would subject them to state criminal sanctions, *cf. United States v. Schaffer*, 266 F.2d 435 (2d Cir. 1959), *aff'd*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

*United States v. Walker,* 432 F.2d 995 (6th Cir. 1970); *Thompson v. United States,* 464 F.2d 538 (5th Cir. 1972). *Cf. United States v. DiGilio,* 538 F.2d 972, 979 (3d Cir. 1976) (Gibbons, J.). *See also United States v. Ditata,* 469 F.2d 1270 (7th Cir. 1972).

In *Ditata,* the defendant was convicted of possessing stock certificates stolen from interstate commerce, the value of which was in excess of $100, in violation of 18 U.S.C. § 659. Five thousand blank stock certificates had been stolen from an air shipment in 1968. In 1971 the defendant was apprehended when he attempted to pledge as collateral the stolen certificates bearing forgeries as to transfer agent, registrar, registered owner, number of shares, and date of issuance. The court rejected the notion that value must be determined by looking to the blank shares. Rather it held that value may be determined by looking to the value of the certificates as forged. Similarly, in *United States v. Kramer, supra,* the Second Circuit directed that the jury be instructed to determine the value of stolen postal money orders in light of *the condition in which the money orders had been placed by the defendant, i. e.,* with the blanks filled in and the validating stamps forged.

We perceive little difference between blank postal money orders or blank stock certificates which have been falsely completed, and blank Ticketron tickets which have been falsely imprinted. The amount of "creative enhancement" is virtually identical in both situations. As the court noted in *Churder,* blank money orders, when completed by the utilization of a validating stamp, can produce much more than the nominal value of the paper. 387 F.2d at 833. The same is true of blank Ticketron tickets. In the hands of an honest individual, the Ticketron blanks are worth nothing. In the hands of Ticketron, they are worth no less than $51.74, the amount which Ticketron paid for them. But in the hands of a thief, who introduces counterfeit Ticketron tickets into legitimate commerce or into a thieves' market, the blank tickets are worth substantially more, as is evident from the very facts of this case. With the court in *Ditata,* "[w]e cannot attribute to Congress an intent to restrict value of property stolen from [or stolen property transported in] interstate commerce to the moment of the theft. Should this be done, the actual value might then be negligible while its potential value realized in the 'thieves' market' would be substantial." 469 F.2d at 1272. *See also United States v. Bottone,* 365 F.2d 389 (2d Cir. 1966).[7]

We conclude, therefore, that the counterfeit Ticketron tickets transported in interstate commerce were the same property as that which had been stolen. Since the value of the tickets at the time they were transported in interstate commerce was clearly in excess of $5,000, the jurisdictional amount requirement of § 2314 has been met.

The judgments of the district court will be affirmed.

---

**7.** As the court in *United States v. Bullock, supra,* stated, "[w]hether the jury evaluated the money orders at what they actually fetched when fraudulently negotiated through legiti-

mate channels, or at what they might bring on the thieves' market, they could have reasonably assessed that value in excess of [the requisite value]." 451 F.2d at 890.