**UNITED STATES of America, Appellee,**

v.

**Mark Anthony JONES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Norma Lee ASHEBER, Appellant.**

**Nos. 86–5004(L), 86–5006.**

United States Court of Appeals,
Fourth Circuit.

Argued June 2, 1986.

Decided Aug. 5, 1986.

Christopher Finch (Lee & Finch, Alexandria, Va., James Donlon Healy, Arlington, Va., on brief), for appellants.

Barry Coburn, Asst. U.S. Atty. (John E. Stevens, Sp. Asst. U.S. Atty., Joseph E. DiGenova, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., on brief), for appellee.

Before CHAPMAN and WILKINSON, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

The appellants were convicted under a two-count indictment of buying, receiving, and concealing stolen property with a value of more than $100 within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 662 and 2 (1982), and of receiving and disposing of stolen property with a value of more than $5,000 after it had moved in interstate commerce in violation of 18 U.S.C. §§ 2315 and 2 (1982). They appeal contending (1) that there was a merger of the two counts in the indictment, (2) that there was insufficient evidence to show a theft in excess of $5,000, and (3) that there was insufficient evidence to convict appellant Norma Asheber on either count. Finding no merit in these exceptions, we affirm.

I

Mark Anthony Jones and Norma Lee Asheber, each of whom used several aliases, were members of a group known as the Black Hebrews. The Black Hebrews were also known as the Original African Hebrew Israelite Nation and had groups in Baltimore and Washington. Two of the members of the Baltimore group worked at the Baltimore-Washington International Airport (BWI). In September 1984, the BWI office of American Airlines requisitioned 5,000 blank tickets from Rand McNally Printing Company. At some time after the tickets were received at the airport but before they were inventoried at the American Airlines office, 1,000 of the blank tickets disappeared. These tickets were numbered 9985–001 through 9986–000.

Pursuant to a court order issued by a United States District Judge in the District of Columbia, the Federal Bureau of Investigation intercepted telephone conversations over four telephone lines used by the Black Hebrews. Tapes of certain of these conversations were introduced into evidence and played for the jury at the trial of this action. Certain telephone calls indicated that members of the group were planning to fly to Israel, and the FBI suspected that tickets stolen from American Airlines might be used. The FBI had the defendants under investigation in connection with the theft of the tickets and suspected that they would be leaving BWI; however, the defendants instead departed from Dulles Airport with American Airline tickets covering a round trip from Washington to Tel Aviv, Israel, by way of London. They flew on British Airways, which honors American Airline tickets. The face value of each ticket was $3,299, and the serial numbers were 9985–325 and 9985–340. After the plane departed Dulles, the FBI contacted the airline and verified that the tickets being used by the defendants had been stolen.

When the defendants arrived in England, the London Metropolitan Police met them at the airport and asked them a number of questions. Norma Asheber made a number of very conflicting statements to the Metropolitan Police concerning her acquaintance with Jones, the length of time they had known one another, the circumstances surrounding the purchase of her ticket, the amount paid for the ticket, the source of such funds, and the method of

travel from BWI to Dulles. She stated that she was going to Israel for a vacation but had no hotel reservations. Jones contended that he had purchased the airline tickets from a man on the street in Baltimore and claimed that he had purchased appellant Asheber's ticket for her.

After the defendants attended court in London, they were released, and they telephoned certain Black Hebrew members in Baltimore and explained what had happened. This call was monitored by the FBI. Defendants were subsequently extradited to the United States.

On June 21, 1985, the FBI executed a search warrant for a bin of the U–Haul storage facility in Baltimore and recovered 649 blank airline tickets. Of these tickets, 540 were among the 1,000 American Airline blank tickets stolen from BWI. The rental contract for the bin indicated that it was leased to Steven Jones, the brother of appellant Jones. The contract stated that in the event of an emergency, U–Haul should notify Shomari Asheber, which was one of the aliases used by the appellant Mark Anthony Jones.

On July 16, 1985, a search warrant was executed by the FBI for an apartment in Chicago. The apartment was the terminus of one of the telephone lines being monitored. A wide variety of items relating to air travel were seized including blank airline tickets from most airlines, memoranda prepared by airlines concerning stolen tickets, metal identification plates that airlines used to validate tickets, blank ticket folders, correction tape for altering listed itineraries on tickets, and membership cards for airline travel clubs.

## II

■ Appellants contend that the two counts of the indictment are multiplicious and that one of the counts should have been dismissed or the conviction vacated because the defendants are being punished twice for the same offense. They assert that the jurisdictional element is the only distinction between the two crimes alleged in the indictment. *Albernaz v. United*

*States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), teaches that in resolving multiplicity claims, the question is whether Congress intended to authorize separate punishments for the two crimes. In the seminal case of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1931), the Court stated:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Appellants argue that the only difference in proof under 18 U.S.C. § 662 and 18 U.S.C. § 2315 is a jurisdictional fact. However, appellants cite no authority for this position.

Under Count 1 of the indictment, which alleges a violation of 18 U.S.C. § 662, the prosecution must prove that (1) the tickets were stolen; (2) the tickets had a value in excess of $100; (3) the defendants bought, received, or concealed the tickets; (4) the defendants knew the tickets were stolen; and (5) the defendants' acts were within the special maritime and territorial jurisdiction of the United States (in this case Dulles Airport).

The essential elements to be proved under Count 2, which alleges a violation of 18 U.S.C. § 2315, are that (1) the tickets were stolen; (2) the tickets had a value of $5,000 or more; (3) the defendants knew the tickets were stolen; (4) the tickets were part of interstate commerce at the time they were received; and (5) the defendants willfully received the tickets after they had moved in interstate commerce.

Count 1 requires proof that the acts were done within the special maritime and territorial jurisdiction of the United States. This is not a requirement under Count 2. However, Count 2 does require proof that the tickets were received after they moved in interstate commerce and that they were a part of interstate commerce when re-

ceived. The proof of these additional facts satisfies the *Blockburger* test. *See also United States v. Huffman*, 595 F.2d 551 (10th Cir.1979).

The congressional purpose in passing 18 U.S.C. § 662 and 18 U.S.C. § 2315 is evident. Congress intended to prevent the receipt of stolen property on federal land and water by enacting § 662, while it sought to protect interstate commerce through § 2315.

### III

■ Appellants contend that there was a failure to prove that the value of the stolen property they received was in the amount of $5,000. They admit that each ticket had a face value of $3,299, but they argue that only the value of the trip from Baltimore to London should be used and that this value was approximately $800. They also argue that the tickets, at the time they were last in possession of their rightful owner, were blank and did not have a value of $5,000 or more.

Appellants are not charged with the theft of the tickets, but are charged with receiving and disposing of tickets that had already been stolen. When the tickets were recovered from the defendants, they had been filled in, validated, and had a face value of $3,299 each. The evidence clearly shows that the appellants possessed these tickets and used them to obtain passage on British Airways. Each defendant is charged with aiding and abetting under 18 U.S.C. § 2, and the value of both tickets may be imputed to each. This case is similar to *United States v. Moore*, 571 F.2d 154 (3rd Cir.1978), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978), in which the defendants were convicted under 18 U.S.C. § 2314 of transporting in interstate commerce stolen property valued in excess of $5,000. The property in that case consisted of 22,400 Ticketron tickets. The printing cost to Ticketron was just over $50, but the defendants used the blank tickets to print counterfeit tickets to various concerts, which they sold for more than $5,000. Moore argued that the tickets had

been substantially altered after they were stolen and that the value of the stolen property did not exceed $5,000. However, the court found that although the defendants may have increased the value of the blank tickets by their counterfeiting efforts, they had not so substantially altered the blank tickets so that they were essentially different from what had been stolen. Since the tickets attained a value of over $5,000 while in Moore's possession, the jurisdictional requirement of value was met. The same reasoning applies to the blank airline tickets which were possessed and used by defendants after they had been altered to cover a trip from Baltimore to Tel Aviv via London.

### IV

■ Norma Asheber contends that there was no direct evidence to show that she knew the tickets were stolen. It is not necessary that the government prove knowledge by direct evidence, since it can carry its burden by circumstantial evidence if it proves knowledge beyond a reasonable doubt. The circumstantial evidence in the present case was more than sufficient to prove her knowledge. She was a member of the Black Hebrew organization, which had been involved in counterfeiting airline tickets. She lived with appellant Jones, one of Jones' aliases was Asheber, and Jones' intercepted telephone call from London suggests that she knew the source of the tickets. The most telling evidence against Norma Asheber comes from her post-arrest interviews with the London Metropolitan Police in which she made many false and inconsistent statements about her acquisition of the stolen ticket. False statements as to the acquisition of stolen property may raise an inference of guilty knowledge. *Cogdell v. United States*, 307 F.2d 176, 179 (D.C.Cir.1962), *cert. denied*, 371 U.S. 957, 83 S.Ct. 515, 9 L.Ed.2d 505 (1963).

AFFIRMED.