**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 92-9508**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**ROBERT GRAVES,**

**Defendant-Appellant.**

_____

**Appeals from the United States District Court**
**for the Middle District of Louisiana**

_____

(October 20, 1993)

Before KING and BARKSDALE, Circuit Judges, and DUPLANTIER,[1] District Judge.

BARKSDALE, Circuit Judge:

The critical issue before us turns on a party being required to object, or make an offer of proof, when the subject covered by a motion in limine arises at trial, in order to preserve the issue for appeal. This and several other evidentiary questions being the principal matters raised on appeal, Robert Graves challenges his conviction and sentence for conspiracy to defraud the United States and Internal Revenue Service, in violation of 18 U.S.C. § 371. We **AFFIRM.**

_____

[1]    District Judge of the Eastern District of Louisiana, sitting by designation.

I.

Graves was the Secretary of the Louisiana Department of Transportation and Development (DOTD) from 1984 to 1988. In late 1986, he contacted Joseph Palermo, a member of the State Mineral Board and businessman in Louisiana. The two had known each other since 1984; Palermo considered Graves a "very good friend".

Graves called on Palermo for help, telling him that he (Graves) had received income from a source he did not wish to reveal to the Internal Revenue Service. Graves stated that he owned property in Mississippi, and suggested that it might be used to help account for the income.

Joseph Palermo did not wish to become directly involved because of his position on the Mineral Board; thus, he asked his brother, Myron Palermo, to help Graves. Myron Palermo told Joseph Palermo, and later told Graves, that he would be willing to provide Graves an apparent source for the income.

The specific scheme to which the Palermos and Graves agreed was executed as follows: Backdated documents were created to show a sale of Graves' Mississippi property to Myron Palermo's company. Graves created backdated receipts for some $40,000 in payments towards the alleged purchase price. The receipts showed Myron Palermo's company as the party making the payments.

Two years later, when Myron Palermo was arrested for attempted distribution of marijuana, authorities recovered the false documents during a search of his business premises. Within a few days of the arrest, Joseph Palermo informed Graves about it and the

document seizure.  As agreed, they met to discuss how to "get[] the property back" in Graves' name.  Graves then met with Myron Palermo, and instructed him to write a letter stating that he could not make the payments on the property and would be willing to return it to Graves.  Graves also instructed him to execute a quitclaim deed returning the property to Graves.  Myron Palermo did both, testifying that these documents were created so "it would look like it was a real transaction, which it wasn't."

Graves was indicted for both conspiracy to defraud the United States and IRS, in violation of 18 U.S.C. § 371, and making a false statement to the IRS (concerning different funds), in violation of 26 U.S.C. § 7206(1).  He was convicted by a jury of the former and acquitted on the latter.  His sentence included 21 months incarceration.

## II.

### A.

Graves bases error on the denial of his motion to strike language from the indictment, which suggested that he was selling his influence as a governmental official.  He asserts that, instead of being tried as charged, he was tried for official corruption.  Specifically, he contends that the conspiracy count should not have identified him as the Secretary of DOTD, and that the false statement count should not have made reference to him selling his influence.[2]  Similarly, he maintains that the district court should

---

[2]     Paragraph two of the conspiracy count stated:

From in or about April 1984 to in or about March

- 3 -

not have admitted evidence that he was engaged in official misconduct.

1.

The denial of a motion to strike is reviewed only for abuse of discretion. *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). For language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial. *Id.*

Graves' contention that the reference to his official position in the conspiracy count should have been struck is without merit. First, the language is relevant to the identity of the defendant charged in the indictment. *See United States v. Reeves*, 892 F.2d 1223, 1228 (5th Cir. 1990) (recognizing that the "identity of the participants" in a conspiracy is relevant). Second, his occupation was relevant to prove the motive of the conspirators. Specifically, the Palermos knew of Graves' position, and Graves advised Myron Palermo that he should call him (Graves) if "[Graves] could ever help me in any way". Evidence suggesting a motive for a crime is relevant. *See*, *e.g.*, *United States v. Mennuti*, 679 F.2d

---

> 1988, the defendant, ROBERT G. GRAVES, was the Secretary of the Department of Transportation and Development (DOTD) of the State of Louisiana.

The false statement count also recited that Graves was the Secretary of DOTD. In addition, it stated:

> In or about August 1986, the defendant, ROBERT G. GRAVES, accepted a substantial sum of money knowing it was paid to him for Graves' past assistance, and to influence Graves to continue to be of assistance, in connection with the obtaining of properties by the State of Louisiana through the DOTD.

- 4 -

1032, 1037 (2nd Cir. 1982). (Nor is the language inflammatory or prejudicial.)

Likewise, we find no abuse of discretion concerning the contested language in the false statement count. The government was required to prove that Graves knew that his income exceeded that which he reported. *See* 26 U.S.C. § 7206(1). The specific allegation made in support of the false statement charge was that Graves peddled influence for cash. Of course, such an allegation may be somewhat sensational; but, that does not make it irrelevant.

2.

For the foregoing reasons, we also find no error in the admission of evidence on whether Graves was receiving unreported income through official misconduct.

B.

Graves next asserts that the district court improperly excluded evidence he sought to introduce to rebut the false statement charge. To prove this charge, the government alleged that a payment of $10,000 by Joseph Palermo to Graves was unreported income. Joseph Palermo testified that the money was given to Graves for his help in the DOTD's purchase of land from Joseph Palermo.[3] And, a DOTD employee testified that Graves' actions in that transaction were not routine.

Graves presented evidence that he had done nothing to influence the acquisition; in fact, a defense witness testified that Graves' actions regarding the transaction were not unusual.

---

[3] The land was owned by Joseph Palermo and others.

Apparently, the jury credited Graves' explanation; he was acquitted on the false statement charge. Now, however, Graves contends that the trial court erred in excluding evidence he sought to introduce regarding the price paid by the State for other parcels of property. Through such evidence, Graves hoped to show that the price paid by the State to Joseph Palermo was not unusually high.

Insofar as Graves was acquitted on the false statement charge, even assuming error, it must be deemed harmless. *See* Fed. R. Crim. P. 52(a). In addition, we find no abuse of discretion in the district court's determination under Fed. R. Evid. 403 to exclude evidence on a plethora of land acquisitions by the State. *See* Fed. R. Evid. 103 ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); *United States v. Ackal*, 706 F.2d 523, 532 (5th Cir. 1983) (essaying abuse of discretion standard of review for limitations on the introduction of evidence); *see also United States v. Quintero*, 872 F.2d 107, 113 (5th Cir. 1989) (noting broad discretion of trial court in determining admissibility of evidence), *cert. denied*, 496 U.S. 905 (1990). Such evidence would have unduly consumed time and risked jury confusion on an issue of little, if any, relevance. It matters not whether Joseph Palermo received special treatment. What is relevant is whether he paid Graves in an effort to procure it.

C.

Graves next challenges the district court's allowing a portion of the government's plea agreement with Myron Palermo to be

withheld from the jury.  Before trial, the government filed a motion in limine to exclude the portion providing that Palermo would be subject to a polygraph examination.  Graves unsuccessfully contested the motion, contending that such a limitation would be "contrary to the established standards of cross-examination and confrontation".  At trial, a redacted version of the plea agreement was introduced; the polygraph clause was excluded.

According to the government, "[n]o polygraph examination of Myron Palermo was ever requested or conducted."  Graves is not attempting to introduce polygraph results into trial; rather, he asserts that he should have been allowed to explore the implications of the government's inclusion of the polygraph clause in the agreement as an issue going to Myron Palermo's credibility. In addition, Graves complains that the government and Myron Palermo affirmatively misrepresented that the redacted agreement was the entire agreement, when Palermo, at the conclusion of an extended colloquy on the agreement, affirmed that it was the "entire" and "only agreement" he had with the government.

1.

For purposes of this appeal, we will assume that the district court erred in permitting the clause to be redacted.  Also, we will assume that the offer made by the district court to Graves -- that the clause could be left in, but that Graves would not be permitted to ask questions about whether a polygraph examination was given and the court would issue a cautionary instruction -- would not cure this error.

- 7 -

At trial, Graves did not object (renew his objection) to the introduction of the redacted agreement.  Rule 103 requires that a timely objection be made; otherwise, we review only for plain error.  *See* Fed. R. Evid. 103.  Although it may seem redundant -- as well as contrary to the underlying reasons for motions in limine -- to require Graves to object at trial after having unsuccessfully opposed the motion in limine, we are bound by a recent decision by this circuit that plainly requires Graves to lodge a contemporaneous objection in order to preserve the issue for appeal.  *See United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993) (per curiam).

In *Estes*, a defendant planned to impeach the testimony of a prosecution witness by introducing a prior conviction.  *Id.* at 148.  The government moved successfully in limine to exclude evidence of the conviction, to which the defendant objected.  *Id.*  The *Estes* court recognized the settled rule of this circuit that a motion in limine does not preserve error for Rule 103 purposes; thus, "`[a] party whose motion in limine is overruled must renew his objection when the evidence is about to be introduced at trial.'" *Id.* at 149 (quoting *Wilson v. Waggener*, 837 F.2d 220, 222 (5th Cir. 1988)).  Though recognizing that *Estes* presented the "opposite situation" -- the appellant had contested a *successful* motion in limine -- the *Estes* court saw "no reason why the same rule should not apply.

[Appellant] should have attempted to offer evidence of the conviction at trial to preserve this issue for appeal."[4]  *Id.*

One commentator advises that "where an objection [in the form of a motion in limine] has been sustained an offer of proof should

---

[4]     There is some tension between ***Estes*** and a prior decision by our court, ***Collins v. Wayne Corp.***, 621 F.2d 777 (5th Cir. 1980). In ***Collins***, a party moved in limine to prevent its opponent from introducing a deposition of one of the movant's experts.  ***Id.*** at 780.     The district court received briefs on the issue; subsequently, it took the motion under advisement "until plaintiffs prepared to offer [the deposition] as part of their trial evidence."  ***Id.***   At some point (perhaps at trial), the district court decided to admit the deposition, but it did impose restraints on the ability of the offering party to adduce additional facts about the deponent.  *See **id.***  For that reason, the offering party chose to not offer the deposition into evidence.  ***Id.*** at 781.   On appeal, that party based error on the restraints imposed by the district court.

The party that had moved in limine to exclude the deposition asserted on appeal that the proponent of the deposition failed to preserve error, by failing to make an offer of proof at trial.  ***Id.*** Our court, applying Rule 103, determined that the "function of an offer of proof is to inform the court what counsel expects to show by the excluded evidence."  ***Id.*** (citation omitted).  The court then determined that error was preserved because the motion in limine papers and briefs made "the substance of the deposition known" to the district court.  ***Id.***

Although, likewise, the district court knew the substance of the evidence excluded in the instant case, ***Collins*** is distinguishable.  The district court in ***Collins*** apparently ruled on the admissibility of the deposition *at the time the deposition would have been offered at trial*.  The instant case more closely resembles ***Estes***, because the district judge was not given the opportunity at trial to reconsider his ruling on the exclusion of the polygraph clause.  Indeed, ***Collins***, in another section of the opinion, notes that "overruling of a motion in limine is not reversible error; only a proper objection at trial can preserve error for appellate review"; therefore, "a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial."  ***Id.*** at 784. The stated rationale is to "give the trial court an opportunity to reconsider the grounds of the motion in light of the actual -- instead of hypothetical -- circumstances at trial."  ***Id.***  This rationale, discussed *infra* in the text, applies here.

be made at trial to make sure that appeal rights are preserved". *See* 1 John W. Strong et al., McCormick on Evidence § 52 at 203 (4th ed. 1992) (footnote omitted). This advice is well taken in this circuit. As discussed in note 4, *supra*, the rationale for requiring either a renewed objection, or an offer of proof, is to allow the trial judge to reconsider his in limine ruling with the benefit of having been witness to the unfolding events at trial.[5] *See* **Luce v. United States**, 469 U.S. 38, 41-42 (1984) ("The ruling is subject to change when the case unfolds. ... Indeed even if nothing unexpected happens at trial, the district judge is free ... to alter a previous *in limine* ruling."); *see also* **Collins**, 621 F.2d at 784 ("Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial.").[6]

---

[5]    In this case, the district court granted the government's motion in limine at a status conference prior to trial.

[6]    Several circuits appear to follow our rule that, to preserve error for appeal, an objection or offer of proof as to the subject presented by a motion in limine must be made at trial. Those decisions do so in the context of an overruling of a motion in limine. *See, e.g.*, **McEwen v. City of Norman**, 926 F.2d 1539, 1544 (10th Cir. 1991); **United States v. Roenigk**, 810 F.2d 809, 815 (8th Cir. 1987); **Hendrix v. Raybestos-Manhattan, Inc.**, 776 F.2d 1492, 1504 (11th Cir. 1985). Nevertheless, some circuits are acting to soften the rule. *See, e.g.*, **United States v. Mejia-Alarcon**, 995 F.2d 982, 986-88 (10th Cir. 1993) (adopting three-part exception to rule), *petition for cert. filed*, (U.S. Sept. 3, 1993) (No. 93-5876); **Greger v. International Jensen, Inc.**, 820 F.2d 937, 941-42 (8th Cir. 1987) (recognizing exception to general rule if trial court makes definitive ruling on motion before trial); **Palmerin v. City of Riverside**, 794 F.2d 1409, 1413 (9th Cir. 1986) ("where the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, and the trial court's ruling permitting introduction of the evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence.")

Because Graves failed at trial to renew his objection (or offer the polygraph clause),[7] we apply the plain error standard of review. Fed. R. Evid. 103. Unless the error is "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice", we will not reverse the conviction. *United States v. Fortenberry*, 914 F.2d 671, 673 (5th Cir. 1990) (quoting *United States v. Graves*, 669 F.2d 964, 971 (5th Cir. 1982)), *cert. denied*, 111 S. Ct. 1333 (1991).

This case does not present such error. First, we question the utility of the polygraph clause for the defense. At oral argument, Graves recognized that the inferences that may be drawn from the clause could either credit or impeach Myron Palermo. Second, even assuming that the jury would have determined that the presence of the clause impeached Myron Palermo's credibility, the jury had before it other impeachment evidence insofar as he was concerned.

Specifically, the jury had the following information about Myron Palermo: (1) he pled guilty to a charge of conspiracy to possess with intent to distribute 2,000 pounds of marijuana; (2) he pled guilty to conspiracy to defraud the United States (money

---

[7] We recognize that Graves would have had to do so through a sidebar conference (on the record) or otherwise handle it outside the hearing of the jury; failure to do so would defeat the purpose of the in limine ruling. The flip side is, of course, that a trial judge should not be surprised, perturbed or annoyed when counsel makes an objection or offer of proof on an issue that the judge believes was disposed of by the in limine ruling; counsel is, at the very least, preserving the issue for appeal.

laundering); (3) he pled guilty to obstructing the United States Customs Service; (4) he had received substantially lighter punishment for these offenses because of his testimony against Graves; and, (5) he had lied originally to federal authorities concerning the documents at issue in the Graves case. As if this was not enough, the jury heard testimony that Myron Palermo was regarded in the community as untruthful. Highlighting this evidence of a reputation for untruthfulness, the district court specifically reminded the jury of it during its charge. In light of the abundant evidence Graves could have used to impeach Myron Palermo, the absence of the more speculative inferences that may have flowed from the polygraph clause falls far short of so infecting the judicial process as to require reversal under the plain error standard of review. (It appears that, even under the normal standard of review, Graves could not show reversible error. Accordingly, although we do not recommend en banc review in this case of our circuit's rule on renewing objections to in limine rulings, we urge that it do so in the appropriate case.)

## 2.

We can certainly understand Graves' concerns regarding the representation by the government that the redacted plea agreement was the "entire" or "only" agreement between it and Myron Palermo. Obviously, government counsel should not represent that a document is the "entire" agreement when, in fact, it is not (even when the only portion of the agreement not disclosed to the jury was subject

to court-ordered limitation).[8]  This notwithstanding, Graves' failure to make a contemporaneous objection to the questions concerning the entirety of the agreement dictates, again, review only for plain error.[9]  *See* Fed. R. Evid. 103; **Fortenberry**, 914 F.2d at 673.  And, the error was not "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice".  *Id.*

D.

Graves also contends that the district court erred in not excusing a juror who, on the last day of trial, reported to the district judge that her husband had been attacked while in a vehicle registered in the juror's name.  The district judge in turn reported to trial counsel that "[s]he said I don't know what jury tampering is, judge, but you told me to report any unusual occurrence".[10]  The juror also advised the district judge that she

---

[8]    We do not suggest that government counsel acted deliberately to distort the truth.  Graves concedes that the prosecutor was not acting out of an "evil" intent.

[9]    Graves asks "what the proper objection might be", stating that he could not object simply because "the witness is lying". Obviously, objection could have been lodged when the government asked if the redacted agreement was the "only" agreement between Myron Palermo and the United States.  Counsel could have then noted that this conflicted with the actual agreement, and that the in limine ruling was preventing him from pointing it out on cross.  Of course, as discussed *supra*, the basis for the objection could have been stated outside the hearing of the jury to prevent undermining the purpose of the motion in limine.

[10]    During the trial, the judge had made the following statement to the jury:

There's one more thing.  If, during the course of

was neither unduly upset by the event nor had her fairness and objectivity been affected adversely. As the basis for contending that the district judge should have utilized an alternate juror, Graves asserts that the juror likely assumed Graves, and not the United States, was "connected with the incident."

For obvious reasons, the district court is afforded broad discretion in determining the impartiality of jurors; it is in the best position to observe their demeanor and credibility. *United States v. Hinojosa*, 958 F.2d 624, 631 (5th Cir. 1992). Accordingly, a ruling respecting such impartiality will not be set aside "absent a *clear* abuse of discretion." *Id.* (emphasis added).

In this case, the juror was questioned by the district court concerning the implications of the attack on her ability to fairly and thoroughly decide Graves' guilt or innocence. Apparently, the district court credited her testimony that the event would not diminish her impartiality. We will not second-guess the district court's determination on this matter.[11]

---

the trial, anyone should come into the courtroom that you know or recognize, please let me know about that. Just call it to my attention and let me know about that, okay?

[11] The government notes that the juror in question voted for acquittal on the false statement count. Obviously, this cannot be part of our calculus. *See United States v. Benavides*, 596 F.2d 137, 140 (5th Cir. 1979) (noting that the validity of a district court's exercise of discretion "does not turn on whether subsequent events prove or disprove" the court's judgment).

E.

Graves contends next that the district court erred by refusing to instruct the jury that the testimony of "immunized" witnesses (Joseph, Myron, and Anthony Palermo) should be "weighed by the jury with *greater* care and caution than the testimony of ordinary witnesses." (Emphasis added.)[12] The similar given instruction identified the three persons subject to immunity and plea agreements, explained the nature of the latter, and cautioned the jury that the testimony of witnesses who have entered plea or immunity agreements "is always to be received with caution and weighed or evaluated with *great* care." (Emphasis added.) In comparing the proposed and given instructions, Graves contends that the latter is "a mere truism", because "the testimony of every witness is `weighed or evaluated with great care.'" Essentially, Graves complains that it was reversible error for the trial court to instruct the jury with the demonstrative "great", as opposed to the comparative "greater."

We disagree. Initially, we note that the district court "has broad discretion in formulating the charge so long as the charge accurately reflects the law and the facts of the case." *United States v. Allred*, 867 F.2d 856, 868 (5th Cir. 1989) (citation omitted). We will reverse a district court's refusal to give a

_____

[12] Apparently, the three Palermo brothers entered into immunity agreements with the United States Attorney for the Middle District of Louisiana, where this case was tried. Only Joseph and Anthony Palermo entered into such agreements with the United States Attorney for the Western District of Louisiana; Myron Palermo entered into a plea agreement with that office.

proposed instruction only if "the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and, (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. 1981); *see also* **Allred**, 867 F.2d at 868.

We agree with the district court that Graves' proposed instruction was substantially covered by those given. As noted, they specifically identified the witnesses who were under immunity or plea agreements, explained the implications of those agreements, and admonished the jury to consider those witnesses' testimony with "great care." The instructions, taken as a whole, *see* **United States v. Chavis**, 772 F.2d 100, 108 (5th Cir. 1985) (requiring that a jury charge "be considered as a whole"), implicitly compared these witnesses to the other witnesses and counseled caution. The court's decision to forego use of the comparative form of the adjective "great" falls far short of reversible error.

F.

Finally, Graves maintains that the district court erred in imposing a two point upward adjustment of his sentence for obstruction of justice. This adjustment is authorized when a defendant engages in conduct which "obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant

- 16 -

offense ...". U.S.S.G. § 3C1.1.[13] "Where a district court enhances a defendant's offense level on account of an obstruction of justice, the district court's finding of *obstructive conduct* is reviewed for clear error." **United States v. Pofahl**, 990 F.2d 1456, 1481 (5th Cir. 1993) (emphasis added), *petitions for cert. filed*, (U.S. Aug. 2, 4, 1993) (Nos. 93-5894, 93-5526).

At trial, there was evidence that Graves knew that the government had discovered false sale records. Also, he knew that his accountant had testified before the grand jury regarding the alleged sale. Graves met with his accountant following his testifying before the grand jury and debriefed him on all the questions he had been asked and answers he had given. Graves then contacted Joseph Palermo and asked him to relay the testimony of the accountant to Myron Palermo, so that Myron Palermo's testimony would be consistent. As Joseph Palermo testified at trial, Graves wanted to make sure "my brother would say the same thing the CPA said."

---

[13] Graves was sentenced in October 1992; thus, the guidelines in effect at that time can be found in the 1991 edition of the Federal Sentencing Guidelines Manual. Inexplicably, the probation officer utilized the 1988 edition. On appeal, we usually apply the guidelines in effect at the time of sentencing. *See* **United States v. Gonzales**, 996 F.2d 88, 90 n.3 (5th Cir. 1993). At any rate, Graves' contention fails under either edition. The only significant difference insofar as our subsequent discussion is concerned is that the 1988 edition's application notes do not include the witness tampering statute, 18 U.S.C. § 1512(b), as an *example* of conduct authorizing the adjustment. However, the 1988 application notes do recognize that the adjustment would be authorized if the defendant unlawfully attempted "to influence" a witness.

The crux of Graves' assignment of error is that this evidence would not support a finding that he suborned perjury, because the truth of whatever Graves told Myron Palermo to say was not explored at trial. This contention fails for three reasons.

First, the district court, with its superior knowledge of the witnesses and proceedings, could well have *inferred* from these facts that Graves was attempting to suborn perjury; it may have reasonably surmised that the purpose of Graves' action was not to remind Myron Palermo to be consistent with the accountant on truthful matters. Admittedly, such an inference might not support a conviction for perjury under a beyond a reasonable doubt evidentiary standard; but, the standard of proof for sentencing issues is a preponderance of the evidence. *United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir. 1993), *petitions for cert. filed*, (U.S. June 30, 1993; July 2, 1993) (Nos. 93-5048, 93-5097).

Second, Graves' conduct may have violated 18 U.S.C. § 1512(b), a witness tampering statute, which in turn would trigger the upward adjustment. *See* U.S.S.G. § 3C1.1, comment. (n.3(i)). Section 1512(b) prohibits one from using corrupt persuasion toward another with the intent of influencing the testimony of another. *See* 18 U.S.C. § 1512(b), (b)(1). This section may not require coercive conduct on the part of the violator. *See United States v. Masterpol*, 940 F.2d 760, 763 (2d Cir. 1991); *see also Pofahl*, 990 F.2d at 1482 (citing *Masterpol* with approval for the proposition that the mere "urging" of a witness to lie satisfies § 1512(d)). Whether one believes Graves was urging Myron Palermo to lie or not,

he was clearly attempting to "influence" the grand jury testimony of Myron Palermo in arguable violation of § 1512(d).

Third, and most importantly, the district court need not have been satisfied that Graves committed either perjury or witness tampering in order to make the adjustment.  Although the Guidelines do list "examples of the types of conduct to which [§ 3C1.1] applies", that list is "non-exhaustive".  *See* U.S.S.G. § 3C1.1 comment. (n.3).  Stated differently, although listed offenses such as subornation of perjury or witness tampering are sufficient to trigger an upward adjustment, they are not necessary;  a district court could properly determine that other conduct satisfies § 3C1.1.

Because we are not "left with the definite and firm conviction that a mistake has been committed" by the district court in its finding on the adjustment, we do not find clear error.  *See* ***Pofahl***, 990 F.2d at 1480 (citation omitted).

III.

For the foregoing reasons, the conviction and sentence are

**AFFIRMED.**