IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31261
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARION DOUGLAS WOOD,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans
USDC No. 94-CR-377-3-B
_____
February 7, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM:[**]

Marion Douglas Wood was convicted of conspiracy to commit mail fraud, wire fraud, and money laundering in his role as President of Midwest Life and Public Investors Life from April 1990 to February 1991. On appeal, Wood challenges his conviction, claiming: (1) that the indictment was duplicitous, because it charged more than one conspiracy, and that it prejudiced him because the evidence, at

---

[*]Judge, U.S. Court of International Trade, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

most, only connected him with one conspiracy; (2) that the delay between the indictment and the trial violated his Sixth Amendment right to a speedy trial; (3) that the district court erred in refusing to strike some of the language in the indictment as prejudicial surplusage; (4) that the district court erred in failing to instruct on materiality; (5) that the district court's instruction pursuant to Allen v. United States, 164 U.S. 492 (1896), modified to meet the current situation, coerced the jury into reaching a verdict; and (6) that the district court erred in applying the sentencing guidelines and in refusing to depart downward. Because we find no reversible error, we affirm Wood's conviction.

I

In December 1989, Southshore Holding Corporation, owned by Bob Shamburger and Gary Jackson, purchased Riverside Holding Company, which owned The Midwest Life Insurance Company ("Midwest"), Fidelity Fire and Casualty Insurance Company ("Fidelity Fire"), Public Investors Life Insurance Company ("PILICO"), and a number of other companies. Shortly thereafter, Jackson and Shamburger hired Wood, a practicing attorney and state legislator in Arkansas, to be president of Midwest and PILICO.

Wood was responsible for filing financial statements for the companies, and for encouraging investor capital. During Wood's

tenure as president of Midwest and PILICO, however, over $40 million in assets were transferred to Jackson and Shamburger, hardly a capital investment. Although Wood contends that he did not examine them, Wood signed a variety of documents, including some that inaccurately reported the value of assets, and others that were backdated to fall into earlier financial quarters. Notwithstanding this good service for those in charge, Wood was discharged by Shamburger in February of 1991.

In December of 1994, Wood was charged along with six other defendants with conspiracy to commit mail fraud, wire fraud, and money laundering, as well as substantive violations of mail fraud in violation of 18 U.S.C. §§ 1341, 1343. The government had the indictment sealed; it was not unsealed until January 1996.

Other facts relate to the speedy trial claim: on February 27, 1996, the court granted the motion of Wood's co-defendant, James L. Adams, to continue the trial date due to the complexity of the case. On March 4, 1996, the court reset the trial for January 1997. At this point, Wood requested that the court not delay the trial, and, two weeks later, filed an objection to the continuance. On April 2, 1997, Wood moved to dismiss the indictment alleging that the court had violated the Speedy Trial Act by improperly entering its continuance order. The district court denied this motion on December 27, 1996. In 1997 and 1998, Wood's

co-defendant, Jackson, filed five separate continuances for medical reasons. Wood objected to some of these continuances, and requested severance from the other defendants, which the court denied.

The case was first tried beginning on January 13, 1999. The jury was unable to break a deadlock, and a mistrial was declared as to Wood on March 5, 1999. Wood was tried again, by himself, on August 2, 1999. The jury deliberated for one and a half days before informing the court that it was deadlocked. After an <u>Allen</u> charge, the jury returned verdicts of guilty on all counts.

Wood filed objections to the pre-sentencing report, which were overruled, and a motion for downward departure from the guidelines, which was denied. Wood was sentenced to fourteen years and five years, to run concurrently, and $1.4 million in restitution.

II

Wood first argues that the district court erred in denying the defendant's motion to dismiss the conspiracy charge as duplicitous. Wood contends that although the indictment supposedly charged only one conspiracy, the government, in fact, charged at least two conspiracies. He argues that he was prejudiced by the introduction of evidence related to a conspiracy in which he had no involvement. Wood also claims that, to the extent that the government claims only one conspiracy, there is no evidence that he was a part of the

4

conspiracy and thus the case against him should have been dismissed.

We review a claim that an indictment is duplicitous de novo. United States v. Sharpe, 193 F.3d 852, 866 (5th Cir. 1999). The indictment should be assessed to determine whether each count can be read to charge only one violation. Id. As long as there is an agreement among the defendants on an overall objective, the indictment can be read to charge one conspiracy. Id. Here, the indictment charged that the objectives of the conspiracy were to defraud Midwest and Fidelity Fire, and to conceal this fraud through the distribution of false financial information.[1] This count can be read to charge only one conspiracy. See United States v. Mann, 161 F.3d 840, 858 (5th Cir. 1999) (recognizing that acts of concealment are sometimes a necessary part of the overall conspiracy). Furthermore, the district court did not err in failing to dismiss the conspiracy charge against Wood for variance

---

[1]We agree that the government's draftsmanship asks for trouble. Specifically, the indictment charged that:
> [t]he main objective of the conspiracy was to defraud Midwest Life and Fidelity Fire of money and other assets, distribute false financial information about Midwest Life to conceal the fraudulent activities, to lure new investors and policyholders, and to deceive current investors and policyholders while distributing false financial information about Public Investors Life to conceal its poor financial condition.

Nevertheless, this charge breaks down into an overall objective of two main components: (1) to defraud Midwest and Fidelity Fire, and (2) to conceal these fraudulent activities.

5

between the conspiracy and the proof offered at trial. The government introduced evidence regarding several of Wood's transactions and misrepresentations that reasonably could support the jury's determination that Wood knew of and adopted the objective of defrauding Midwest and Fidelity Fire and concealing that fraud. For instance, the government introduced evidence that Wood, as president of Midwest, signed a backdated purchase and sale agreement selling the Parkway Plaza building to three shell corporations, even though, at the actual date of the agreement, he was hiring real estate agents to attempt to sell the building. The government also introduced evidence that Wood helped to create a bogus $5,000,000 promissory note, turning the loss on Midwest's financial statements into a gain, by signing a letter canceling an already executed agreement for a $6,000,000 loan, and substituting a backdated document claiming $11,000,000 in indebtedness for virtually the same collateral. Although Wood claims he only signed the documents, and was not aware of the contents of the documents, this evidence, and evidence of other transactions, could reasonably support the jury's determination that Wood was involved in the conspiracy.

III

Wood next challenges the district court's failure to dismiss the indictment for lack of a Speedy Trial, as guaranteed by the

6

Sixth Amendment.[2] Wood was indicted in December of 1994, the indictment was unsealed in January of 1996, and his first trial took place in January of 1999. Thus, approximately four years elapsed between the date of his trial and the date of his initial sealed indictment, and approximately three years elapsed between the date of his trial and the date of the unsealing of the indictment.[3]

The Supreme Court has provided a four-part balancing test to determine whether a defendant received a speedy trial under the Sixth Amendment. In evaluating Wood's claim, we must consider: (1) the length of the delay, (2) whether the defendant asserted his right to a speedy trial, (3) the reason for the delay, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). We view the length of delay as a threshold inquiry. A delay of one year is presumptively prejudicial, and, therefore, is sufficient to trigger speedy trial analysis. United States v.

_____

[2]On appeal, Wood does not challenge the delay under the Speedy Trial Act, nor does he challenge the district court's ruling that there was no due process violation in the pre-indictment delay of forty-five months.

[3]Because we find that Wood's Sixth Amendment right to a speedy trial was not violated either by the delay between the date of the unsealing of the indictment and the date of trial or the date of the initial indictment and the date of the trial, we do not consider whether the Sixth Amendment right to a speedy trial attaches when the defendant is initially indicted or when the indictment is unsealed.

<u>Lucien</u>, 61 F.3d 366, 371 (5th Cir. 1995). Because Wood's case was delayed for three to four years, we turn to consider the other three factors. Wood's objections to the continuances centered primarily on his requests for severance from the other defendants. He did, however, assert his right to a speedy trial.

We must next take into account the reasons for the delay. Trial was delayed, first, because the indictment was sealed while the government searched for all of the defendants, and, second, because Wood's co-defendants moved for continuances for extra preparation time and illness. As the Supreme Court has noted, "pretrial delay is often both inevitable and wholly justifiable." <u>Doggett v. United States</u>, 505 U.S. 647, 656 (1992). Thus, "where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." <u>Cowart v. Hargett</u>, 16 F.3d 642, 647 (5th Cir. 1994). Here, there is no indication that the government failed to search for Wood's co-defendants with diligence. Furthermore, the government objected to the continuances requested by Wood's co-defendants. Because the delays were not the result of the government's negligence or bad faith, but instead are attributable to Wood's co-defendants, this factor weighs in favor of the state.

Finally, we examine the degree of prejudice resulting from the delay. Because "the government was reasonably diligent in its

8

efforts to bring the defendant to trial, the defendant must show 'specific prejudice to his defense.'" Robinson v. Whitley, 2 F.3d 562, 570 (5th Cir. 1993) (quoting Doggett, 505 U.S. at 654). Potential harm resulting from a delay includes oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's defense will be impaired by "dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654. Here, there was no pretrial incarceration. Wood only complained about anxiety in his first speedy trial motion. Thus, Wood first argues that, because of the delay, he lost the important testimony of Jerry Willis. Wood has failed to demonstrate, however, that not having Willis's testimony impaired his defense. Wood has also not explained why neither he nor his attorney took steps to interview Willis or preserve his testimony. See United States v. Neal, 27 F.3d 1035, 1043 (5th Cir. 1994). Wood next argues that the delay impaired his memory, which weakened his trial testimony. Specifically, he contends that the prosecutor confronted him with transactions and conversations that had allegedly taken place nine years earlier, and then juxtaposed that against his grand jury and civil deposition testimony. While Wood's confusion on the stand might be tangentially related to the three- or four-year time lapse between indictment and trial, Wood did not suffer memory lapses on direct examination. The possible

9

relationship between his confusion at the hands of the prosecutor and the time delay does not support a finding of actual prejudice. Thus, in balancing all of these factors, we must conclude that Wood's right to a speedy trial under the Sixth Amendment was not violated.

IV

Wood also argues that the district court erred in not striking allegations in the indictment that Wood caused a number of acts to be done, such as causing individuals and entities to make campaign contributions to a corrupt Louisiana insurance commissioner to ensure less regulation and review of the insurance companies' management. In his motion to strike, Wood objected to seventeen uses of the word "cause" in the indictment, only one of which is described in detail in his appellate brief. Wood claims that the trial judge should have known that the allegations were prejudicial surplusage because they were unsupported by any evidence at the first trial.

We review a district court's decision to deny a motion to strike for abuse of discretion. <u>United States v. Graves</u>, 5 F.3d 1546, 1550 (5th Cir. 1993). To hold that this refusal to strike should invalidate Wood's conviction, we must find that the "allegedly excessive language was irrelevant, inflammatory and prejudicial." <u>United States v. Bullock</u>, 451 F.2d 884, 888 (1971).

10

Because we find that Wood failed to meet this exacting standard, the district court did not commit reversible error in denying the motion to strike.

V

Because Wood did not object at trial to either the district court's failure to instruct the jury as to the materiality element of mail fraud and wire fraud, or the district court's <u>Allen</u> charge to the jury to continue deliberating, this court reviews both of those determinations for plain error.  Because we find that neither of these actions "seriously affect fairness, integrity or public reputation of judicial proceeding and result in miscarriage of justice," there is no plain error.  <u>United States v. Waldrip</u>, 981 F.2d 799, 805 (5th Cir. 1993).

VI

Finally, Wood objects to the district court's application of the sentencing guidelines and its failure to downwardly depart.  We review a district court's application of the sentencing guidelines de novo and its findings of fact under a clearly erroneous standard.  <u>United States v. Morrow</u>, 177 F.3d 272, 300 (5th Cir. 1999).  Wood argues that the district court should not have used money laundering as a basis for his sentence, because he was not even charged with money laundering.  Under U.S. Sentencing Guidelines Manual § 1B1.2(d), using money laundering as the basis

11

for sentencing on Wood's conspiracy violation was appropriate as long as "the court, were it sitting as trier of fact, could convict the defendant of conspiring to commit that object offense." U.S. Sentencing Guidelines Manual § 1B1.2(d), cmt. n.4. In overruling Wood's objection to the use of money laundering for the basis of Wood's sentence, the district court specifically noted that Wood signed off on the Grant Street transaction, in which Midwest purchased mortgages from Master Holding, 98, Inc., a company owned by Jackson and Shamburger. Midwest purchased the mortgages at their face-value from Master Holding, despite the fact that Wood had received correspondence that the mortgages were being offered at a steeply discounted rate. Because we find that the district court's determination that Wood conspired to launder money through the Grant Street transaction was not clearly erroneous, we uphold Wood's sentence.

Wood also appeals from the district court's refusal to depart downward from the sentencing guidelines, arguing that the disparity between his sentence and the sentence of his co-conspirator is unjustified. This court, however, can only review a district court's refusal to depart from the guidelines if its decision was based on the erroneous belief that it did not have the authority to depart. United States v. Davis, 226 F.3d 346, 359 (5th Cir. 2000). A review of the record convinces us that the

district court was aware of its ability to depart downward but chose not to depart.  Thus, the district court's decision not to depart is unreviewable.

VII

The district court did not err in failing to find the indictment duplicitous, in finding that there was no Sixth Amendment speedy trial violation, in refusing to strike certain terms from the indictment, and in not instructing the jury on materiality.  We also hold that the <u>Allen</u> charge given to the jury was not plain error, and that the district court did not err in applying the sentencing guidelines.  Accordingly, the judgment of the district court is

A F F I R M E D.