United States Court of Appeals
Fifth Circuit

**F I L E D**

April 21, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

Nos. 01-31482 & 02-30286
_____

WAVY H. DOYLE, JR., in his capacity as testamentary executor on behalf
of Wavy H. Doyle Succession; ERA L. DOYLE,

Plaintiffs-Appellees,

versus

MARK C. LANDRY; GAYLE LOUISE SCHULTZ, formerly known as Gayle
Louise Doyle; NEWMAN, MATHIS, BRADY WAKEFIELD & SPEDALE,

Defendants-Appellants.

_____

Appeals from the United States District Court
For the Western District of Louisiana
(No. 98-CV-2332)

_____

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Appellees, Wavy and Era Doyle ("the Doyles"), filed an action against Appellants, Gayle

Schultz ("Schultz"), her lawyer, Mark Landry ("Landry"), and his firm, Newman, Mathis, Brady,

Wakefield & Spedale ("Newman Mathis") (collectively "Appellants"), claiming damages for

Appellants' premature invocation of a writ of fieri facias ("writ of fi fa") against the Doyles' property.

The Doyles asserted a federal claim under 42 U.S.C. § 1983 based on Appellants' unconstitutional

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

application of a state statute in deprivation of the Doyles' due process rights, and a pendent state claim for wrongful seizure. After trial, the jury returned a special verdict finding that Appellants "knowingly or intentionally committed acts that resulted in the wrongful seizure of the Doyles' property," and awarded $11,448.75 in special damages for attorneys' fees incurred in the Louisiana state court proceedings against all Appellants, $50,000 in general damages against all Appellants for emotional distress, and punitive damages against Landry and Newman Mathis in the amount of $200,000. For the following reasons, we AFFIRM in part and REVERSE and REMAND in part.

## I. FACTS AND PROCEEDINGS

This action arose pursuant to Schultz's attempt to enforce a Texas judgment against the Doyles, and their son, Jerry Wayne Doyle. During a divorce proceeding between Schultz and Jerry Doyle, Jerry Doyle attempted to hide from Schultz community assets that were subject to a property settlement by, *inter alia*, diverting funds into his parents' Louisiana bank accounts. Consequently, Schultz named the Doyles as additional defendants in the divorce action and sought an award of punitive damages under Texas law. The Texas court awarded $100,000 in punitive damages and attorneys' fees to Schultz against the Doyles and Jerry Doyle.

Schultz hired Landry, a lawyer at the firm, Newman Mathis, to enforce the Texas judgment against the Doyles in Louisiana. On January 26, 1998, Landry filed a petition on behalf of Schultz in the Ninth Judicial District Court for the Parish of Rapides for recognition and enforcement of the Texas judgment. The Doyles retained Robert Nida ("Nida") and the firm of Gold, Weems, Bruser, Sues & Rundell to defend against the enforcement of the Texas judgment. On February 18, 1998, Nida filed an Answer and Reconventional Demand on the Doyles' behalf to stay enforcement of the Texas judgment.

2

On March 9, 1998, Schultz obtained an order recognizing the Texas judgment pursuant to the Louisiana version of the Uniform Enforcement of Foreign Judgments Act.[1] Landry did not request that the clerk send a copy of the Notice of Judgment to the Doyles or their counsel, Nida. Three days later, on March 12, 1998, through Landry, Schultz requested that the clerk of court issue a writ of fi fa directing the sheriff to seize the Doyles' home pursuant to Louisiana Code of Civil Procedure article 2253. Landry sent a copy of the letter requesting the writ to the sheriff, but he did not send a copy to Nida.[2] Schultz and Landry requested the writ of fi fa before the Doyles received notice of the March 9 order recognizing the Texas judgment, and before the delays for suspensive appeals had run.[3]

The clerk of court issued the writ of fi fa on March 20, 1998. The sheriff went to the Doyles' home and served them with the Notice of seizure, which constructively seized the Doyles' home on March 30, 1998. It was at this time that the Doyles received notice of the March 9 Order enforcing the Texas judgment in Louisiana. Nida, who was also unaware of the March 9 Order prior to seizure, promptly filed pleadings to recall the writ and to enjoin the seizure and sale.

The Doyles successfully petitioned the Ninth Judicial District Court to revoke the writ of fi fa and to issue a preliminary injunction enjoining the sale of their home.[4] The Third Court of Appeal

[1] LA. R.S. 13:4241, *et seq*.

[2] Landry used Newman Mathis letterhead to conduct all correspondence, acting as one of their attorneys. 4 R. at 104.

[3] Louisiana Code of Civil Procedure article 2252 forbids the issuance of a writ of fi fa before the delays for suspensive appeal expire.

[4] At this point, the Doyles' home had been seized for 39 days.

affirmed.[5] The Louisiana Supreme Court denied certiorari, finding that the Court of Appeal's result was correct.[6]

The Doyles filed suit against Schultz, Landry, and Newman Mathis, asserting a claim under 42 U.S.C. § 1983 for deprivation of property without due process and a pendent state law claim for wrongful seizure. Mr. Doyle died before trial. Consequently, his oldest son, Wavy H. Doyle, Jr. ("Harry") was permitted to proceed on his father's behalf as testamentary executor.

At the close of the Doyles' case, Appellants moved for Judgment as a Matter of Law ("JMOL") as to the state claim of wrongful seizure for defendants Mark Landry and Newman Mathis under Rule 50(a). The court, however, denied the motion because "[Landry and Newman Mathis] are the state actor [sic] when they [were] engaged to do [the writ of fi fa] and are so imbued with the state regulatory process that they become state actors." 4 R. at 129. At the close of the Appellants' case, during jury deliberations, Appellants proffered evidence from events leading to the Texas judgment that had been excluded *in limine* by the court at the beginning of the trial. Appellants argued that the evidence could have been used to impeach Mrs. Doyle. *See id.* at 214. Appellants did not renew their Rule 50 motion at the close of all evidence or after trial, nor did they move for a new trial under Rule 59.

The jury returned a special verdict in favor of the Doyles. The jury found that Appellants "knowingly or intentionally committed acts that resulted in the wrongful seizure of the Doyles' property." They awarded special damages in the amount of $11,448.75 for the attorneys' fees the Doyles incurred while contesting the writ of fi fa. The jury further awarded general damages for

[5]*See Schultz v. Doyle*, 727 So.2d 691 (La. App. 3 Cir. 1999).

[6]*See Schultz v. Doyle*, 743 So.2d 670 (La. 1999).

4

emotional distress in the amount of $50,000. Finally, they found that punitive damages were appropriate against Landry and Newman Mathis, and therefore awarded the Doyles $200,000. The district court awarded the Doyles attorneys' fees incurred in bringing the 42 U.S.C. § 1983 ("§ 1983") claim pursuant to 42 U.S.C. § 1988.

Appellants raise six issues on appeal, contending that the district court: (1) erred in finding that Appellants were liable as state actors under § 1983 for wrongfully seizing the Doyles' property in violation of their due process rights because the Doyles were not deprived of property rights, nor were they deprived of notice and opportunity to be heard; (2) erred in refusing to allow Appellants to cross-examine Mrs. Doyle regarding the Texas proceedings for purposes of impeachment under Rule 608(b); (3) erred in denying Appellants' motion for JMOL for Landry and Newman Mathis with regard to the state wrongful seizure claim; (4) erred in allowing the Doyles to recover as special damages attorneys' fees incurred in state court; (5) erred in allowing the jury to award the Doyles excessive general damages; and (6) erred in awarding punitive damages against Landry and Newman Mathis.[7] We REVERSE and REMAND for a new trial with regard to general and punitive damages, but we AFFIRM on all of Appellants' other grounds for appeal.

## II. DISCUSSION

### A. Appellants' Liability Under § 1983

1. Standard of Review

The Appellants did not move for Judgment as a Matter of Law under Federal Rule of Civil

---

[7]Appellants also argue, in one page without citing any authority, that the district court erred by awarding attorneys' fees to the Doyles under 42 U.S.C. § 1988. A party waives an issue if he fails to adequately brief it. *See L&A Contracting v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994) (refusing to review an issue where a party "cit[ed] no authority in its one-page argument"). Accordingly, this issue is inadequately briefed, and we regard it as waived.

Procedure Rule 50 either at the conclusion of all of the evidence with regard to the § 1983 issue, the wrongful seizure issue, or with regard to damages, nor did they make a post-verdict motion for JMOL or for a new trial. Consequently, the Appellants raise the following issues for the first time on appeal. "It is the unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error." *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993). Under plain error analysis, to correct an error that was not raised at trial, this Court must determine whether there is: "(1) error; (2) that is plain; and (3) that affect[s] substantial rights." *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 685 (5th Cir. 1998) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

2. Analysis

The Appellants first argue that the district court erred in finding that they were liable as state actors under § 1983 for wrongfully seizing the Doyles' property because the Doyles were not deprived of property rights, nor were they deprived of notice and opportunity to be heard. Appellants' argument is without merit. As the Supreme Court held in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), private parties invoking a state attachment statute which results in the deprivation of a federal right, may be held liable under § 1983 if their actions are fairly attributable to the State. *Id.* at 936. The *Lugar* court established a two-part test to determine whether the deprivation of a party's right by a private actor may be fairly attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible;" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937.

First, it is clear that the Doyles were deprived of both their property rights, and notice and

6

opportunity to be heard. A writ of fi fa under Louisiana law clearly interferes wit h an owners' property rights, regardless of whether the owner continues to live on the seized property. *DuBois v. Travelers Indem. Co.*, 261 So.2d 94, 96 (La. App. 3 Cir. 1972). "[A]t a minimum, [the due process clause] require[s] that deprivation of life, liberty or property by adjudication be *preceded* by notice." *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 313 (1950) (emphasis added). Accordingly, as observed in *Cobb v. Miller*, 818 F.2d 1227 (5th Cir. 1987), one of the main concerns with regard to a writ of fi fa is that "the party whose property is to be seized has notice and an opportunity to be heard *before* seizure." *Id.* at 1239 (emphasis in original). It is undisputed that the Doyles received notice of the Louisiana Order enforcing the Texas judgment well after their home was already seized. Unlike the plaintiffs in *Cobb*, the Doyles were not afforded an opportunity to be heard before seizure, and therefore were deprived of property without notice and opportunity to be heard.

Second, a private part y's joint participation with state officials in the seizure of disputed property based on that party's *ex parte* application is sufficient to characterize the party as a "state actor" for purposes of the Fourteenth Amendment. *Id.* at 941-42. As such, the Appellants were state actors because: (1) Schultz requested the writ of fi fa, which set into motion the procedures directly involving state officials that led to the constructive seizure of the Doyles' home, and (2) as Schultz's attorneys, Landry and Newman Mathis may be considered state actors because they employed the state to execute the writ of fi fa, a state-provided procedure. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1267 (3d Cir. 1994).

7

**B. District Court's Exclusion of Pre-Texas Judgment Evidence**

1. Standard of Review

When reviewing evidentiary rulings by the district court, this Court typically applies an "abuse of discretion standard." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 578 (5th Cir. 1993). If the district court excludes evidence when a party has made an offer of proof *in limine*, and the party then fails to later renew its offer of proof, the evidentiary ruling is subject to plain error review. *United States v. Graves*, 5 F.3d 1546, 1552-53 (5th Cir. 1993). Plain error review applies here because Appellants did not timely renew their objection to the exclusion of the Texas proceedings evidence when Mrs. Doyle testified. *See id.* at 1552-53.

2. Analysis

Appellants contend that the district court erred in excluding evidence regarding the Texas proceedings that lead to the writ of fi fa. Appellants argue that the evidence should have been admitted for purposes of impeaching Mrs. Doyle under Federal Rules of Evidence Rule 608(b).

Under Rule 608(b) "[s]pecific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence." "By its language, Rule 608(b) clearly prevents the [parties] from presenting evidence of specific instances of untruthful conduct by certain . . . witness[es] to show that these witnesses had a propensity for untruthfulness." *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 641 (5th Cir. 2001). However, extrinsic evidence of specific instances of bad conduct may come in if offered for more than the sole purpose of exhibiting the witness's general capacity to be untruthful. *See United States v. Opager*, 589 F.2d 799, 801 (5th Cir. 1979) (finding that district court erred in excluding evidence under Rule 608(b) when it tended to prove not only

8

the defendant's reputation for truthfulness, but also supported a material element of her defense). Here, it is doubtful that the wire transfer records and handwritten statements evidencing the Doyles' compliance with Jerry Doyle's scheme would have been offered for anything other than specific instances of conduct showing the Doyles' propensity for untruthfulness.

Moreover, the jury had the Texas judgment before them during their deliberations, which stated: "WAVY H. DOYLE and ERA L. DOYLE conspired to commit fraud and did commit fraud on the community and GAYLE LOUISE DOYLE." Any impeachment purpose that would have been served by the excluded evidence was undoubtedly fulfilled by the Texas judgment itself. Therefore, unlike other cases where the extrinsic evidence of a specific instance of conduct bears directly on a witness' testimony in a material issue in a case, or proves something more than the witness' character for truthfulness, the district court did not commit plain error in excluding the letters and wire transfer records from evidence.

## C. Judgment as a Matter of Law on the State Wrongful Seizure Claim

The Appellants next claim that the district court erred by denying Appellants' motion for JMOL for Landry and Newman Mathis with regard to the state wrongful seizure claim because an attorney cannot be held liable to a non-client unless the attorney knowingly violated a prohibitory statute. Appellants moved for JMOL at the close of the Doyles' case, but did not renew the motion. Consequently, this Court reviews this issue for plain error. *See supra* Part II.A.1.

In *Penalber v. Blount*, 550 So.2d 577 (La. 1989), a police jury filed suit against Penalber and her attorney, Connelly, for wrongful seizure of public funds. As occurred in this case, Connelly intentionally failed to request that the police jury receive notice that Penalber had issued a writ of fi fa against some of their assets. The Louisiana Supreme Court held that, while an attorney may not

9

be held liable to a non-client for malpractice or negligence because the attorney owed no duty to the non-client, an attorney could be held liable to a non-client for intentional tortious conduct. *Id.* at 582. Moreover, the court explained that the "intent" element of an intentional tort is not concerned with a desire to do any harm. "Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although . . . honestly believing that the act would not injure the plaintiff." *Id.* (citations omitted).

Given the definition of an intentional tort by the Louisiana Supreme Court in *Penalber*, it is clear that while Landry may have believed his interpretation of the law was correct, he intended to seize the Doyles' property and took measures to ensure that they were not apprised of the issuance of the writ before the sheriff seized their property. As such, he intentionally took measures to bring about a result which invaded the Doyles' interests in a way that the law forbids. *Penalber*, 550 So.2d at 582. Thus, the district court did not plainly err in denying JMOL to Landry and Newman Mathis.

**D. Attorneys Fees as Special Damages**

After finding in favor of the Doyles on their § 1983 claim, the jury awarded them $11,448.75 in special damages for attorneys' fees incurred in fighting the writ of fi fa in state court. Appellants contend that the district court erred in awarding attorneys' fees as special damages because when the Doyles sought an injunction in the underlying st ate action, the statute allowing for injunction of a wrongful seizure provided the court *may* allow damages if the court grants the injunction to the judgment debtor. LA. CODE CIV. PROC. art. 2298. Appellants argue that because the Doyles were successful in procuring the injunction and did not seek attorneys' fees pursuant to the statute, they were precluded from pursuing attorneys' fees in any other context. The Appellants raise this argument for the first time on appeal, and thus it is subject to plain error review. *See supra* Part

10

II.A.1.

Federal authority supports the award of attorneys' fees as special damages in a § 1983 action. A plaintiff who establishes deprivation of a constitutional right actionable under § 1983 is entitled to recover compensatory damages for all injuries that arise as a result of that deprivation, including economic harm. *Castellano v. Fragozo*, 311 F.3d 689, 710 (5th Cir. 2002). In *Castellano*, this Court allowed a § 1983 plaintiff to recover attorneys' fees incurred in defending against a malicious prosecution as compensatory damages because the damages were a direct and foreseeable result of the defendants' wrongful conduct. *Id.*; *see also Hale v. Fish*, 899 F.2d 390, 403 (5th Cir. 1990) (finding that attorneys' fees incurred by plaintiff in defending a wrongful arrest in state court should be included as an item of compensatory damages in a § 1983 claim based on the arrest, notwithstanding the fact that plaintiff's mother, not plaintiff, had paid the fees).

In this case, the Doyles clearly suffered economic harm as the result of the premature writ of fi fa against their home. They incurred $11,448.75 in fees by retaining Nida to fight the writ of fi fa and to seek an injunction against the sale of their home in Louisiana district court, in the Court of Appeal, and finally in opposing a writ of certiorari to the Louisiana Supreme Court. The Doyles incurred the attorneys' fees as a direct result of Appellants' wrongful conduct as well as the Appellants' determination, all the way to the Louisiana Supreme Court, that they correctly invoked the writ of fi fa procedures. Such damages were foreseeable. Accordingly, given this Court's findings that attorneys' fees are permissible items of compensatory damages in other § 1983 cases, *e.g., Castellano*, 311 F.3d at 710; *Hale*, 899 F.2d at 403, the district court did not commit plain error by awarding the Doyles $11,448.75 in special damages.

**E. General Damages as Excessive**

11

1. Standard of Review

The Appellants next challenge the Doyles' $50,000 general damages award as excessive. In evaluating the issue of excessive damages, "the question for this Court is whether viewing the testimony and exhibits most favorably to the plaintiff, there is within the standard [of review] sufficient evidence" to support the amount of damages awarded by the jury. *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922, 927 (5th Cir. 1976). When a party fails to comply with Rule 50 by moving for JMOL at the close of evidence and then further fails to make or renew the motion at the end of trial, plain error review applies to evaluate the issue of sufficiency of the evidence. *Wallace v. Flintco, Inc.*, 143 F.3d 955, 963 (5th Cir. 1998). Consequently, under plain error review, "[t]he question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict." *McCann*, 984 F.2d at 673 (emphasis in original). If there is no evidence to support the jury verdict, appellate relief is limited to ordering a new trial. *Id.*

2. Analysis

Generally, this Court considers a jury verdict excessive only if it is "contrary to right reason" or "entirely disproportionate to the injury sustained." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 375 (5th Cir. 2000). To prove a claim for mental damages, the claimant must prove a "specific discernable injury" to his emotional state "with evidence regarding the 'nature and extent' of the harm." *Id.* at 376 (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938, 940 (5th Cir. 1996)). The type of evidence that a claimant may use to meet that burden may include "corroborating testimony or medical or psychological evidence." *Id.* at 940 (citations omitted).

In *Hart v. Walker*, 720 F.2d 1436 (5th Cir. 1983), a case similar to the case at hand, plaintiffs

sued a city official under § 1983 for deprivation of property rights and the right to be free of unwarranted arrest without due process. In that case, this Court approved a jury award of $7,500 for deprivation of the plaintiffs' enjoyment of their property, emotional distress, and the destruction of the plaintiffs' culverts. *See id.* at 1441-42. In doing so, the Court noted that the plaintiffs presented evidence that "the incident resulted in significant publicity in the community and that the Harts were humiliated as a result." *Id.* at 1441.[8]

In Louisiana cases regarding state claims for wrongful seizure, general damages awards for humiliation, embarrassment, inconvenience and worry typically range from $750 to $2,500. *See, e.g., Commercial Credit Corp. v. Nolan*, 385 So.2d 1246, 1248-49 (La. App. 3d Cir. 1980) (awarding $2,500 in general damages for humiliation, embarrassment, and worry as a result of the seizure of claimant's home for two and one-half months); *Dubois*, 276 So.2d at 815 (increasing general damages award to $750 for emotional distress resulting from wrongful seizure of claimant's home for ten months).

Here, while the Doyles presented corroborating evidence by their attorney, Nida, and their son, Harry, to demonstrate their emotional distress, without more, it could not support an award of $50,000. It is noteworthy that the writ of fi fa only seized the Doyles' home for approximately 39 days until the state district court enjoined the seizure. While the Doyles may have been concerned

---

[8]The Doyles urge that in other § 1983 cases in this Circuit where the jury awarded general damages for emotional distress, the awards have sometimes been as high as $100,000. Nevertheless, we note that in those cases, the plaintiffs experienced other serious manifestations, often physical in nature, as a result of their distress. *See, e.g., Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 (5th Cir. 2000) (noting that plaintiff suffered sleep loss, severe weight loss, and began to smoke); *Forsyth v. City of Dallas*, 91 F.3d 769 (5th Cir. 1996) (finding that distress caused plaintiffs to suffer depression, weight loss, intestinal problems, marital problems, and to resort to seeing a psychologist). Because the Doyles did not put forth such evidence at trial, these cases are not useful comparisons here.

that they could possibly lose their home during that time, they were permitted to remain on the premises for the entire period. Moreover, there was no evidence to show that there were additional circumstances, such as the significant humiliating publicity suffered by the plaintiffs in *Hart*, that contributed to their emotional distress. The litigation that ensued as a result of the wrongful seizure may have been an inconvenience to the Doyles. However, given the $7,500 jury award in *Hart* and the damages awards in the Louisiana wrongful seizure cases, it is clear that the Doyles did not present any evidence to show that the $50,000 jury award was proportionate to the harm sustained.

**F. Punitive Damages**

1. Standard of Review

The Appellants next argue that the district court should not have awarded *any* punitive damages. Because the award of punitive damages is within the discretion of the trier of fact, *Longoria v. Wilson*, 730 F.2d 300, 305 (5th Cir. 1984), when reviewing the propriety of an award of punitive damages, this Court's scope of review is "strictly limited." *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir. 1989).

2. Analysis

While general or compensatory damages are often awarded at the same time as punitive damages, and by the same decisionmaker, they serve distinct purposes. The purpose of general or compensatory damages is to compensate for the concrete harm the plaintiff has suffered as a result of the defendant's harmful conduct. *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001). By contrast, punitive damages are not compensation for injury—"they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). A jury may assess punitive damages in a § 1983

14

case when the defendant's conduct exhibits callous or reckless indifference to the federally protected rights of others. *Melear,* 862 F.2d at 1187 (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

At the very least, some punitive damages were appropriate here. Landry's conduct demonstrates that he intended to prevent the Doyles and their counsel from receiving notice of the Order enforcing the Texas judgment as well as the writ itself.[9] In doing so, he exhibited a "callous indifference" to the Doyles' right to not be deprived of their property without notice and an opportunity to be heard. *Id.* By awarding punitive damages, the district court served the dual goals of punishing Landry and his law firm for their conduct and deterring them from intentionally concealing notice from their opponents. *Id.*

In any event, although punitive damages may stand independently of compensatory damages, the two are sufficiently interwoven in this case such that both issues should be retried together in the interests of justice. *See Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1389 (5th Cir. 1977). Consequently, we remand the issue of punitive damages for a new trial.

## III.  CONCLUSION

In light of the foregoing, we AFFIRM the district court's ruling on the issues of § 1983 and wrongful seizure liability, and special damages. However, we REVERSE and REMAND for a new trial on the issue of general and punitive damages.

---

[9]Although Landry previously copied the Doyles' attorney, Nida, on other documents, he deliberately declined to copy Nida on his request to the clerk of court for the issuance of the writ of fi fa, and declined to notify Nida about the writ when Nida filed a memorandum opposing the motion to enforce the Texas judgment *after* the court issued the Order recognizing the Texas judgment. Landry was fully aware that "the sheriff's department was going to show up at Mr. and Mrs. Doyle's house, unbeknownst to them, and serve them with the seizure order." 4 R. at 48.